CITY OF ASHEVILLE v. W. P. HERBERT AND CHARLES H. COOKE.

(Filed 16 December, 1925.)

1. **Statutes — Private Local Laws — Municipal Corporations — Cities and Towns—Private Sale of Lands—In Pari Materia.**

Where a city has broad powers to sell its real estate not held for governmental purposes and uses, and later its charter has been amended so as to curtail these powers and in conformity with this omission in the private act, a public act is passed requiring previous notice of sale by advertisement in a prescribed way and the sale be public, the private and public acts are to be construed *in pari materia.*

2. **Same—Advertisement of Private Sale.**

Where the charter of a city, requiring that its lands not held for present public use, has been amended so as to curtail the broad powers theretofore given in respect to sale and a general statute requires a certain preceding advertisement before the lands may be sold, the requirements of the public statute must be complied with in order for the city to make a valid sale. C. S., 2688.

3. **Same—Repugnancy.**

The repugnancy between a private statute authorizing a city to sell its lands and a later public statute on the subject generally, must be real and not seeming, in order to work a *pro tanto* repeal, and repeal by implication will be avoided if possible, and the two statutes will be construed together so as to give effect to both unless there is contradiction or repugnancy, or absurdity or unreasonableness, and mere difference in their terms is not always sufficient.

4. **Same—Trusts.**

A statute authorizing a city to sell municipal lands does not by implication apply to such as are held in trust for its use or to streets in reference to which adjoining property owners have acquired rights, such as by dedication and resulting improvements.

APPEAL by defendants from BUNCOMBE Superior Court. *Lane, J.*

Action to compel defendants to perform specifically contract to purchase land. From a judgment in favor of plaintiff, defendants appealed. Reversed.

The agreed statement of facts shows the following:

The plaintiff and the defendants agreed that the plaintiff would sell and the defendants would purchase the Ryerson property situate in West Asheville, containing 90 acres, at the price of $50,000, at private sale, and plaintiff tendered to defendants a deed in due form purporting to convey the said lands in fee simple, according to the terms of contract to purchase. Defendants declined to accept plaintiff's deed therefor, on the following grounds:

"(a) That the city of Asheville had no authority to sell said lands and premises to the defendants, and (b) that even if the city of Ashe-

ville had authority to so sell the land to the defendants, the sale to the defendants and the said deed was void, for that the commissioners of said city had failed to comply with the provision of C. S., 2688, which provides that "The mayor and commissioners of any town shall have full power at all times to sell at public outcry, after thirty days notice, to the highest bidder, any property, real or personal, belonging to any such town, and apply the proceeds as they think best"; no notice whatever being given or published of said sale, as required by said section, the said lands and premises, not having been sold at public outcry to the highest bidder, but by private sale, pursuant to the resolution hereinbefore set forth."

The defendants have, at all times, been ready, able and willing to comply with their contract to purchase said property. Appropriate resolutions were adopted by the city of Asheville, approving the tentative agreement entered into between plaintiff's mayor and the defendants, directing that a conveyance in its name with the usual covenants of seizin and warranty free from encumbrances be tendered to the defendants, and said deed was tendered in all respects in accordance with said resolution. The court below was of opinion that the deed so tendered was valid to convey to the defendants a good indefeasible title in fee simple to the said lands, and the defendants were directed to pay the purchase price in accordance with the contract.

*Jones, Williams & Jones* for plaintiff.
*Merrimon, Adams & Adams* for defendants.
*Frank Carter, amicus curiae,* filed a brief.

VARSER, J. The controversy is restricted to the question whether the city of Asheville can make a valid private sale of this land. It is admitted that C. S., 2688, has not been complied with. The charter of plaintiff city is set out in Private Laws 1923, ch. 16, and in sec. 1 thereof, among its enumerated corporate powers is the power to acquire and hold "all such property, real and personal as may be devised, bequeathed or in any manner conveyed to it, and may invest, sell or dispose of same." This charter of the plaintiff is a reënactment and a consolidation of its charters of Public Laws 1883, ch. 143 and Private Laws 1883, ch. 111, and acts amendatory thereof. It appears to be a recasting of the entire group of legislative acts theretofore comprising its charter. Section 1, of chapter 111, Private Laws 1883, empowers the plaintiff to "purchase and hold for purposes of its government, welfare and improvement, all such estate, real and personal, as may be deemed necessary therefor, or as may be conveyed, devised or bequeathed to it, and the same may, from time to time, sell, dispose of and reinvest as

shall be deemed advisable by the proper authorities of the corporation."
The 1923 reënactment causes the quoted excerpt to read as follows:
"Acquire and hold all such property, real and personal, as may be
devised, bequeathed, sold, or in any manner conveyed to it, and may
invest, sell or dispose of same."

We are forced to conclude that the Legislature was mindful, not only
of the terms contained in the 1923 reënactment, but was, also, mindful
of the omissions from its former charter. Chapter 112, Public Laws
1872-3, now C. S., 2688, has remained intact since the time of its enact-
ment. It provides that the mayor and commissioners of any town shall
have power at all times to sell at public outcry, after 30 days notice,
to the highest bidder, any property, real or personal, belonging to any
such town, and apply the proceeds as they may think best. Of course,
this section is held not to apply to such lands as are held in trust for
the use of such town (*Southport v. Stanly,* 125 N. C., 464), or such
real estate as is devoted to governmental purposes (*Turner v. Comrs.,*
127 N. C., 154; *Carstarphen v. Plymouth,* 180 N. C., 26), or to streets
in reference to which adjoining property owners have acquired rights
on account of the dedication thereof, and resulting improvements. *South-
port v. Stanly, supra; Moose v. Carson,* 104 N. C., 431; *Church v. Dula,*
148 N. C., 262; *Moore v. Meroney,* 154 N. C., 158. The record in
*Carstarphen v. Plymouth, supra,* shows that the trial court put his
decision on the double basis that C. S., 2688, did not give the authority
to sell land held for governmental purposes, and that it had not been
complied with.

*Shaver v. Salisbury,* 68 N. C., 291, apparently conflicts with the later
authorities. Upon a careful examination of the charter of Salisbury,
it is clear that wide and unusual powers were given the commissioners,
and it was expressly committed to their discretion as to the manner and
method of exercising these powers.

The character of the property, that is whether it is trust property or
held for governmental purposes, is not involved in this action, and that
question is not considered, for we understand that it was conceded upon
the argument that the "Ryerson property" is such as can be sold by
the plaintiff, provided the method of sale required by law is followed.
In *Newbold v. Glenn,* 67 Md., 489, 10 Atl., 242, the statute authorizing
a sale of property required notice to be published in a newspaper in
Baltimore city, but the mayor and council did not comply therewith,
but, in good faith, and for full value, sold the property at private sale,
and its conveyance was upheld. We cannot accept the reasoning in this
case.

In the instant case it is a question of power, under the law. Good
faith on the part of the authorities of the city of Asheville, is clearly

apparent from the entire record and an excess over cost to the extent of $20,000 is in the sale price. The legal requirements, whatever they may be, must be followed. *Murphy v. Greensboro, ante,* 268. Good faith and apparently fair price cannot dispense with the law.

It is the accepted doctrine in this jurisdiction that the powers of a municipality, accurately described in Dillon on Municipal Corporations (5 ed.), sec. 237, as follows: "It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers, and no others: First, those granted in express words; second, those necessarily or fairly implied in or incident to the powers expressly granted; third, those essential to the accomplishment of the declared objects and purposes of the corporation—not simply convenient, but indispensable." *Smith v. New Bern,* 70 N. C., 14; *S. v. Webber,* 107 N. C., 962, 965; *S. v. Eason,* 114 N. C., 787, 791; *Love v. Raleigh,* 116 N. C., 296, 307; *S. v. Higgs,* 126 N. C., 1014, 1021; *Elizabeth City v. Banks,* 150 N. C., 107; *Danville v. Shelton,* 76 Va., 325; *Blake v. Walker,* 23 S. C., 517; *Charleston v. Reed,* 27 W. Va., 681; *Barnett v. Denison,* 145 U. S., 135; *Cleveland School Furniture Co. v. Greenville,* 146 Ala., 559; *Crofut v. Danbury,* 65 Conn., 294; *Jacksonville Electric Light Co. v. Jacksonville,* 36 Fla., 229; *Foster v. Worcester,* 164 Mass., 419; *S. v. Butler,* 178 Mo., 272; *Winchester v. Redmond,* 93 Va., 711; *R. R. v. Dameron,* 95 Va., 455; *Donable v. Harrisonburg,* 104 Va., 533. All acts beyond the scope of the powers granted to a municipality are void. *Dillon on Municipal Corporations, supra; Somerville v. Dickerman,* 127 Mass., 272; *Harvard College v. Boston,* 104 Mass., 470; *S. v. Passaic,* 41 N. J. L., 90; *Heiskell v. Baltimore,* 65 Md., 125; *Christie v. Malden,* 23 W. Va., 667. In construing the extent of the powers of municipalities, the fundamental and universal rule is, that while the construction is to be just, seeking first of all for the legislative intent in order to give it fair effect, yet any fair, reasonable or substantial doubt as to the extent of the power is to be determined in favor of the public and against the municipality. Dillon on Municipal Corporations, sec. 239. This grows out of the fact that the majority-will controls, and that minorities are bound by the acts of majorities, and that the public officers occupy a trust relation in which the inhabitants of the city are *cestuis que trustent,* and the officers are trustees. The *power of sale* in the instant case exists both under the charter and under C. S., 2688. In the light of this rule of construction, we are forced to conclude that the Legislature intended, when it reenacted plaintiff's charter in 1923, omitting therefrom the pertinent language committing the method of sale to the discretion of plaintiff's officers, to include within its terms the general law (C. S., 2688), which was an exclusive method under the doctrine expressed in the maxim, *"expressio unius est exclusio alterius,"*

and that this general statute (C. S., 2688), should be, and was, the only method by which municipalities could sell, unless special provision was made. Therefore, its proper use of the power to sell in plaintiff's charter carried with it the terms of C. S., 2688, as to the method of exercising the power of sale.

This controversy is not as to whether the power of sale exists, because the power is conceded, but it is the method of exercising the power. We are advertent to the salutary rule that a general statute shall read as silently excluding from its operation the cases which have been provided for by a special statute (*S. v. Johnson,* 170 N. C., 685; *Felmet v. Comrs.,* 186 N. C., 252), and when there is repugnancy between the general statute and the special statute, and both are complete within themselves, and it is not practical to apply the doctrine of *in pari materia,* then the general statute gives way to the special statute in order to effectuate the legislative intent as far as may be. We conclude that there is no repugnancy between the charter and C. S., 2688, and that they must be construed *in pari materia.*

When the charter of a municipality contained a proviso prohibiting it from pledging its credit for over $10,000 without a vote, a subsequent act empowered the city to build a bridge and pledge its credit therefor, was held subject to the condition and limitation of the proviso in *S. v. Election Comrs.,* 58 Cal., 561. Repugnancy between general and special acts must be real and not seeming in order to work a *pro tanto* repeal. Endlich on Interpretation of Statutes, sec. 226; *Harrisburg v. Scheck,* 104 Pa. St., 53. Repeals by implication will be avoided, if possible, and if two statutes can be read together they should be so read, to the end that both will be effective unless there is contradiction or repugnancy, or absurdity or unreasonableness. Lewis' Sutherland on Statutory Construction, sec. 267; *Regina v. Mews,* 6 Q. B. Div., 47; *Smith v. Speed,* 50 Ala., 276. Difference is not sufficient to justify the inference of repeal, there must be contradiction. *Kesler v. Smith,* 66 N. C., 154; *Landis v. Landis,* 39 N. J. L., 274; *Nixon v. Piffet,* 16 La. Ann., 379.

In view of these rules so widely recognized and applied by the courts, we are minded to conclude that both the plaintiff's charter and the general law, grant the power to sell the land in controversy, and that C. S., 2688, must be complied with by plaintiff in order to make a valid sale thereof. In *Harris v. Durham,* 185 N. C., 572, is clearly demonstrated the ease with which the contrary intent could have expressed itself in plaintiff's 1923 charter, by using the words "publicly or privately," and thereby excluding all uncertainty.

The reasons urged in the excellent brief of counsel for plaintiff against the rule herein declared, are reasons more properly addressed to the legislative branch than to the judicial. It is ours *jus dicere* and not *jus dare.* If inconvenience shall result, we feel that the public adver-

tisement and the sale at public auction makes the transfer of such property by a municipality so public and so open that every objector can have his proper remedy and all persons who assume the responsibilities of public office in municipalities must needs be beyond the domain of criticism. The contemplated sale, in the instant case, apparently could net the city a profit of $20,000 *non constat* that a public sale would not net the city a much larger profit, or, if not satisfactorily sold, the city has a right to reject any and all bids.

Let it be certified that the judgment appealed from is

Reversed.