This was an action to restrain the City of Charlotte from executing deed without monetary consideration conveying certain real property, owned by the city, to the Charlotte Veterans' Recreation Center, under authority of ch. 460, Public Laws 1945 (herein referred to as Senate Bill No. 154).
On the hearing below it was agreed that the plaintiff is a citizen, resident and taxpayer of the City of Charlotte; that the City of Charlotte has a population of more than one hundred thousand inhabitants according to the last Federal census, and that defendant H. H. Baxter is the mayor, and Lillian R. Hoffman the clerk of the city.
"4. That the defendants, Curtis B. Johnson, Elmer Hilker, T. E. Hemby, Louis G. Ratcliffe, and Ernest B. Hunter are acting as commissioners of Charlotte Veterans' Recreation Center, pursuant to an Act of the 1945 Session of the General Assembly of North Carolina, known as Senate Bill No. 154 of the said session, having been appointed as provided in said Act and having obtained a certificate of incorporation from the Secretary of State, a copy of which is attached to the complaint, marked Exhibit A and made a part hereof, and that all the necessary formalities for the organization of said corporation are in accordance with the provisions of said Act of the General Assembly. Copy of the resolution of the City Council of the City of Charlotte relative to *Page 693 
the creation of said Veterans' Recreation Authority is hereto attached marked Exhibit C.
"5. That on the 18th day of October, 1945, the City Council of the City of Charlotte, undertaking to act under the authority of Sec. 14 of the Act of the General Assembly hereinbefore referred to, passed a resolution authorizing the execution of a deed by the City of Charlotte to Charlotte Veterans' Recreation Center without monetary consideration. A copy of said resolution, including copy of the said deed, is attached to the complaint, marked Exhibit B, and made a part hereof.
"6. That the Charlotte Veterans' Recreation Center, through its Commissioners hereinbefore named, has already made definite plans to exchange the property to be deeded to it by the City of Charlotte for other property in accordance with the provision in the proposed deed from the City of Charlotte permitting such exchange.
"7. That, unless restrained by the court in this action, the defendant, H. H. Baxter, as Mayor, and the defendant, Lillian R. Hoffman, as Clerk, of the City of Charlotte, will execute and deliver to Charlotte Veterans' Recreation Center deed as authorized in the resolution of the City Council hereinbefore referred to and that, thereupon, the said Charlotte Veterans' Recreation Center, and its commissioners, will undertake to effect an exchange of said property received from the City of Charlotte for other property, as provided in the proposed deed from the City of Charlotte.
"8. That the defendant, City of Charlotte, for many years, owned the northwest corner of East Fifth and North College Streets, the same having located thereon for many years a City Auditorium, which auditorium has been removed from said lot and for approximately 10 years same has been leased by the City of Charlotte, and the lessee thereon has used the same for a filling station and parking lot; that the City of Charlotte, in 1945, as provided by law, sold said property for $51,000.
"9. That for many years the City of Charlotte owned the piece of property located at the northeasterly corner of North Graham Street and West Fifth Street in the City of Charlotte, same having located thereon a water tank used in connection with the water system of the City of Charlotte; that the same has ceased to be used for said purposes and the City of Charlotte duly sold and conveyed this property in the year 1945, for $18,000.
"10. That as a result of the sale of said City properties referred to in paragraphs 8 and 9 above, the City obtained a total sum of $69,000.
"11. That in the year 1945, the City of Charlotte purchased from the then owners of the property that property located on North Poplar Street in the City of Charlotte, described in Exhibit B, hereto attached, *Page 694 
for $52,500 which funds were taken from the $69,000 received from the sale of the property referred to in paragraphs 8 and 9 above.
"12. That the United States of America since 1941, has been and still is at war with the German Reich, the Kingdom of Italy, the Japanese Empire and other satelite [satellite] countries, or what is known as the Axis powers; that the State of North Carolina and the City of Charlotte are a part of the United States of America and that approximately 19,000 of the citizens of Charlotte and the adjacent territory under the jurisdiction of the Charlotte Veterans' Recreation Center entered the armed forces of the United States, and that approximately 2,000 veterans of World War II have returned to the City of Charlotte and the territory within the jurisdiction of the Charlotte Veterans' Recreation Center.
"13. That the Charlotte Veterans' Recreation Center has a commitment from a citizen of Charlotte for a gift of $40,000 for building purposes conditioned upon the property referred to in the resolution of the City Council being conveyed upon substantially the terms set out in the deed incorporated in the resolution of the City Council, marked Exhibit B and attached to the complaint.
"14. That at the present time the City of Charlotte is the only City in North Carolina having a population of over 100,000 according to the last Federal census."
The Act under authority of which the City of Charlotte proposes to execute the deed contains the following pertinent provisions: It declares that it is in the public interest that adequate recreational facilities be provided in cities of more than 100,000 population for persons who have served or are serving in the armed forces of the United States in the present war, and if the governing bodies of such cities find there is lack of adequate recreational facilities, power is given for the appointment of five commissioners to act as Authority. The commissioners so appointed are directed to apply for a charter, setting out their appointment and the proposed name of the corporation, and to secure from the Secretary of State a certificate of incorporation. The boundaries of the Authority are declared to be the city limits and the area within ten miles from such limits. The commissioners are required to provide separate recreational facilities for white and colored. Provision is made for filling vacancies in membership of commission, and for reports. In the construction of the facilities, zoning and building laws are to be observed, but the property shall be exempt from taxation, and also exempt from the operation of Local Government Act or County Fiscal Control Act. Section 14 of the Act authorizes the city, in order to provide construction, repair or management of any Veterans' recreation project, to sell and convey without consideration or for a nominal consideration to an Authority within *Page 695 
such city any real property, and bind itself to the performance and observance of the agreements and conditions attached thereto.
The conditions annexed to the deed which the City of Charlotte proposes to execute, are that the Charlotte Veterans' Recreation Center shall have the right to convey in fee simple the property thus conveyed in exchange for other real property, the property so conveyed or that for which it may be exchanged to be operated and maintained under control of the Commissioners of the Veterans' Recreation Center in accordance with the provisions of the Act. It is provided in the proposed deed that if the Charlotte Veterans' Recreation Center shall cease to exist or fail to maintain veterans' recreational facilities on the property, or if the commissioners determine at any time that the property is no longer needed for the purposes set forth in the Act, or that the number of veterans who wish to use the facilities offered is not sufficient to justify continuance of the project, then the property shall be sold by the commissioners and the net proceeds used to establish a home for the aged in Charlotte or for an increase in the charity wards of Charlotte Memorial Hospital.
By a vote of 7 to 2 the City Council of Charlotte adopted resolution directing the Mayor and City Clerk to execute deed for the Poplar Street property under authority of the Act for maintaining and operating a Veterans' Recreation Center in Charlotte, incorporating in the deed the terms and conditions above set out. The minority vote in the City Council was in opposition to the terms of the deed rather than the purpose of the conveyance.
Judgment was rendered that the Act of the General Assembly was valid and the Charlotte Veterans' Recreation Center a public corporation validly created; that thereunder the City of Charlotte had full power to execute the proposed deed without consideration upon the terms and conditions set out; and that section 14 of the Act was constitutional and valid. The plaintiff's prayer for restraining order was denied. The plaintiff excepted and appealed.
The taxpayers' suit to restrain the proposed donation by the City of Charlotte of valuable real property for the purpose of providing recreational facilities for persons who are now serving in the armed forces of the United States, or who have served in the war recently ended, presents questions of (1) the power of the General Assembly to authorize the gift, and (2) the power of the city to execute the deed, (3) in the form proposed. *Page 696 
At the outset it may be said that there seems to be no constitutional limitation upon the power of the General Assembly to create a corporation for a public purpose. Art. VIII, sec. 1; Dickson v. Brewer, 180 N.C. 403,104 S.E. 887; Webb v. Port Commission, 205 N.C. 663, 172 S.E. 377;Wells v. Housing Authority, 213 N.C. 744, 197 S.E. 693. The legislative power both as to the State and to political and administrative subdivisions thereof is restrained only by the limitations imposed by the State Constitution or that of the United States.
For the protection of the rights of individuals and to preserve the interest of the public from encroachment it is provided by Art. I, sec. 7, of the North Carolina Constitution that "no man or set of men are entitled to exclusive or separate emoluments or privileges from the community but in consideration of public services." And in Art. I, sec. 2, it is declared that "all government of right originates from the people, is founded upon their will only, and is instituted solely for the good of the whole." And this is supplemented by the provision of Art. VII, sec. 7, which prohibits a city or other municipal corporation from contracting debts or levying taxes, except for the necessary expenses thereof, "unless by a vote of the majority of the qualified voters therein."
Manifestly, the State cannot authorize the City of Charlotte to donate its property, or to grant privileges to one class of citizens not to be enjoyed by all, except in consideration of public services. In Brown v.Commissioners, 223 N.C. 744, 28 S.E.2d 104, it was said the Legislature may not "lawfully authorize a municipal corporation to pay gifts or gratuities out of public funds."
Are the services rendered by citizens called out to defend their country in time of war to be regarded as "public services" within the meaning of Art. I, sec. 7, of the Constitution? It was so held in Hinton v. StateTreasurer, 193 N.C. 496, 137 S.E. 669. See also People v. WestchesterCo. National Bank, 231 N.Y. 465. While the services which have been rendered and are now being rendered by those for whom the facilities of the Veterans' Recreation Center are to be provided were primarily rendered to the United States, they were also rendered to an extent to each community constituting a competent part of a common country. Local units, members of the National Guard and National Guard Reserve were incorporated into the armed forces of the United States, together with those called under the selective draft. Arver v. U.S., 245 U.S. 366. "The service was public, the consideration is implied." Hinton v. State Treasurer, supra. In that case it was said, "Since the dawn of civilization the nations of the earth have always recognized an obligation to those of its citizens who bore arms in their defense. This obligation has been fulfilled in many ways. Appropriate recognition of it has always served to encourage patriotism and the *Page 697 
promotion of the public welfare." "Services rendered in such a cause must necessarily be a public service." State v. Clausen, 113 Wn. 570. The weight of authority in other states where the question of the validity of donations to service men following World War I was considered supports this view. See cases cited in the Hinton case, supra, and in People v.Westchester Co. Bank, supra. In the last cited case the Court construed a clause in the New York Constitution similar to ours, but which does not include the words "but in consideration of public services," as prohibiting an issue of bonds by the state to provide a bonus for veterans of World War I, Judges Cardoza and Pound dissenting. See also R. R. v. Forbes,188 N.C. 151, 124 S.E. 132.
The General Assembly has declared that it is in the public interest that adequate recreational facilities be provided in populous cities for those now serving in or who have recently been discharged from the armed forces of our country, and the City of Charlotte has found the lack of such facilities there and that in the public interest they are needed in that city. While not controlling, these findings and declarations are persuasive. Martin v. Raleigh, 208 N.C. 369, 180 S.E. 786. It may be noted that from the area embraced in the Charlotte Center alone 19,000 persons have been called or have entered into the service of their country in this war, and that 2,000 have returned. The presence of a rapidly increasing number of soldiers and veterans who come to this territory, whether temporarily or for permanent residence, presents a problem in public service which it is thought may be solved in part by the creation of the facilities proposed.
In Hinton v. State Treasurer, supra, it was held that a statute setting aside a fund and creating an administrative agency to make loans for the purpose of enabling veterans of World War I to purchase homes was within the legislative power, unrestrained by Art. I, sec. 7. In Bridges v.Charlotte, 221 N.C. 472, 20 S.E.2d 825, it was declared that payments from the retirement fund to teachers after they had ceased to serve were not offensive to Art. I, sec. 7, of the Constitution, in that they were regarded as in the nature of delayed compensation for public services rendered, or delayed payments of salary. In Martin v. Raleigh,208 N.C. 369, 180 S.E. 786, an appropriation by the City of Raleigh for the hospitalization of the indigent sick and afflicted of the city was upheld; and the creation of a Port Commission as a State agency was held to be for a public purpose and the Act declared not offensive to the Constitution.Webb v. Port Commission, 205 N.C. 663, 172 S.E. 377. So also the creation of a Housing Commission was held to be for a public purpose and the use of municipal property in connection therewith approved, the purpose of the Act being to promote health, sanitation and good order. Wells v.Housing Authority, 213 N.C. 744, 197 S.E. 693. *Page 698 
The power of a city to make appropriation for a public purpose was expressed by Chief Justice Stacy in Briggs v. Raleigh, 195 N.C. 223,141 S.E. 597, in these words: "The primary role of municipal government is that of a protector of rights and not a giver of gifts, but if the end in view be a public municipal one, it is the general holding that a city may aid by donation in proper instances, as well as by other means of assistance."
The power of cities to dedicate real property for use as recreation centers and for other recreational purposes is expressly conferred by G. S., 160-156, and the exercise of this power was held by this Court to be in the public interest and for a public purpose. Atkins v. Durham,210 N.C. 295, 186 S.E. 330; White v. Charlotte, 209 N.C. 573 (575),183 S.E. 730. In the Atkins case, supra, the issuance of bonds for the acquisition of land for public parks and playgrounds in the City of Durham was upheld as a necessary expense.
The constitutional limitation contained in Art. I, sec. 7, has been frequently invoked by this Court to strike down legislation conferring special privileges not in consideration of public service. Simonton v.Lanier, 71 N.C. 498; Ketchie v. Hedrick, 186 N.C. 392, 119 S.E. 767;Power Co. v. Elizabeth City, 188 N.C. 278, 124 S.E. 611; S. v. Fowler,193 N.C. 290, 136 S.E. 709; Plott v. Ferguson, 202 N.C. 446,163 S.E. 688; Little v. Miles, 204 N.C. 646, 169 S.E. 220; Edgerton v. Hood,Comr. of Banks, 205 N.C. 816, 172 S.E. 481; Cowan v. Trust Co.,211 N.C. 18, 188 S.E. 812; S. v. Warren, 211 N.C. 75, 189 S.E. 108; RealtyCo. v. Boren, 211 N.C. 446, 190 S.E. 733; S. v. Dixon, 215 N.C. 161,1 S.E.2d 520; S. v. Harris, 216 N.C. 746, 28 S.E.2d 104. But where the motivation is for a public purpose and in the public interest, and does not confer exclusive privilege legislation has been upheld. Hudsonv. Greensboro, 185 N.C. 502, 117 S.E. 629; Briggs v. Raleigh, 195 N.C. 223,141 S.E. 597; S. v. Sasseen, 206 N.C. 644, 175 S.E. 142;Newman v. Comrs. of Vance County, 208 N.C. 675, 182 S.E. 453; LoanCorp. v. Trust Co., 210 N.C. 29, 185 S.E. 482; Allen v. Carr, 210 N.C. 513,187 S.E. 809; S. v. Lawrence, 213 N.C. 674, 197 S.E. 586;Lilly Co. v. Saunders, 216 N.C. 163, 4 S.E.2d 528.
We conclude that the objection to the validity of the Act authorizing the creation of the Charlotte Veterans' Recreational Center cannot be sustained. To justify declaring void an Act of the General Assembly, its unconstitutionality must clearly appear. Reasonable doubts are to be resolved in favor of its validity. S. v. Brockwell, 209 N.C. 209,183 S.E. 378.
2. Has the city power even with legislative authority to convey valuable real property without monetary consideration for a public purpose *Page 699 
which is at the same time not a necessary purpose? It is admitted here that the property proposed to be conveyed was derived from the sale of other property which had been owned by the city for many years, and that it is not now used or presently needed for municipal purposes, and that this property may be regarded as equivalent to surplus funds in the treasury. Under the principle announced in Adams v. Durham, 189 N.C. 232,126 S.E. 611, and Goswick v. Durham, 211 N.C. 687, 191 S.E. 728, and Turnerv. Reidsville, 224 N.C. 42, the city would have power to appropriate surplus funds for a public purpose though it be not one which may be classified as a necessary purpose or expense. Holmes v. Fayetteville,197 N.C. 740, 150 S.E. 624; Nash v. Monroe. 198 N.C. 306, 151 S.E. 634;Mewborn v. Kinston, 199 N.C. 72, 154 S.E. 76; Burleson v. Board ofAldermen of Spruce Pine. 200 N.C. 30, 156 S.E. 241. A limitation upon this principle, however, was pointed out in Sing v. Charlotte, 213 N.C. 60,195 S.E. 271. In that case it was held that funds in the city treasury derived from taxation, though labeled "contingent fund," could not be used for a public purpose which was not a necessary expense, without a vote of the people. The distinction between the Sing case, supra, and theAdams case, supra, was that in the latter no question of taxation or credit was involved. The purchase of property from surplus funds was within the power of the city (Goswick v. Durham, 211 N.C. 687, 191 S.E. 728), and the power to sell real property owned by the city in order to use the proceeds for the acquisition of other property for public use was upheld inHarris v. Durham. 185 N.C. 572, 117 S.E. 801.
3. However, we think the city should be restrained from executing deed for the city's property upon the terms proposed.
While the making of provision for veterans' recreational facilities, where the need therefor has been declared by the City Council, in accord with the enabling Act of the General Assembly, may, under the circumstances here disclosed, come within the category of a public purpose and in the public interest, this should not be understood as affording the sole criterion for the disposition of the city's property upon the terms proposed. The public purpose so declared may constitute authority for the dedication of real property not presently required for other municipal purposes to be used in carrying out the purposes for which the Veterans' Recreational Authority was created, so long as the need continues, under the control of the city, with provision for reversion of the property or its equivalent in the event the purpose of the grant should cease and the property be no longer required or used therefor. But the Act under which the Veterans' Recreational Center was created may not be held to authorize the city to make an absolute grant of its property upon such terms that in the event the grantee determines the public purpose has *Page 700 
failed, or the recreational facilities placed thereon for veterans are not being sufficiently used, the grantee may dispose of the property in its discretion and apply the proceeds to such charity as it may elect. Under the charter of the city (Public-Local Laws 1939, ch. 366), as well as general law (G.S., 160-229, 160-282), the powers of the city within respect to hospitals and provisions for indigent sick are to be exercised by the City Council. Discretionary exercise of these powers may not be delegated. Murphy v. Greensboro, 190 N.C. 268 (277), 129 S.E. 614;Bowles v. Graded School, 211 N.C. 36, 188 S.E. 615. The purpose contemplated by the Act and the Resolution of the City Council to provide recreational facilities for veterans is necessarily of limited duration, and the ultimate disposition of the property would be placed beyond the control of the city. It is a sound principle of municipal law that a city may exercise only such powers as are expressly granted, necessarily implied or essential to its purposes. Asheville v. Herbert, 190 N.C. 732,130 S.E. 861; Madry v. Scotland Neck, 214 N.C. 461, 199 S.E. 618.
It must be held that the execution of the deed upon the terms proposed is beyond the power of the city and in excess of authority conferred by the Act, and that the motion for restraining order should have been allowed.
The provisions in the statute expressly authorizing conveyance of the property by deed would seem to supersede, for the public purpose therein declared, the city's charter provision that sale of city property be at auction. The statute declares that in so far as its provisions are inconsistent with any other law the provisions of the Act shall be controlling. R. R. v. Gaston County, 200 N.C. 780, 158 S.E. 481;Kirkman v. Stoker, 201 N.C. 11, 158 S.E. 551; Asheville v. Herbert,190 N.C. 732, 130 S.E. 861.
There was error in denying plaintiff's motion for a restraining order as prayed.
Error.