L. E. BAGWELL, JR., v. TOWN OF BREVARD, AN INCORPORATED MUNICIPALITY.

(Filed 16 June, 1966.)

**1. Municipal Corporations § 17—**

An advertisement for the sale of municipal property on a date less than 30 days after the first publication of the notice cannot relate back to a prior publication of notice, even though the prior notice related to substantially the same land, when the prior notice stipulates a different date for the sale and contains material differences in the terms of payment, as well as a discrepancy in the quantity of land to be sold and whether the land would be offered for sale as a whole or in separate tracts, and therefore the purported sale on the date specified in the second advertisement is a nullity. G.S. 160-59.

**2. Same—**

Even in regard to the sale of land which a municipality has the power to sell, the sale must be made in conformity with G.S. 160-59, and if the publication of the notice fails to comply in substance with the requirements of the statute, the sale is a nullity.

**3. Municipal Corporations § 4—**

All acts of a municipality beyond the scope of the powers granted to it are void.

MOORE, J., not sitting.

APPEAL by plaintiff from Campbell, J., October-November 1965 Session of TRANSYLVANIA.

In this action plaintiff seeks specific performance of an alleged contract by defendant Municipality to convey certain real property to him. The facts, which are undisputed, are stated in chronological order:

At a special meeting on July 19, 1965, the Board of Aldermen of the Town of Brevard decided to sell the town's Country Club property. By resolution, the Board directed that its sale at public auction on August 16, 1965, be advertised for four consecutive weeks, beginning July 22, 1965. Pursuant to this resolution, the first advertisement of the proposed sale appeared in the *Transylvania Times*, a weekly newspaper of general circulation in the county, in the issue which was published as of July 22, 1965. Copies, however, were available at newsstands during the late afternoon of the 21st. This advertisement described the property by metes and bounds and as containing 132.98 acres, less 7.77 acres also described by metes and bounds, and "Lots 35 and 36 in section 2 of the Montclove Estates." The advertisement announced that the Board of Aldermen reserved the right to reject any and all bids; that 10% of the final bid must be paid at the sale; and that the balance would be payable in cash upon delivery of the deed. Thereafter it was discovered that one lot, intended to be included, had been omitted from the metes and bounds description in the advertisement. At a special session on July 26, 1965, the Board ordered a new publication of the notice, advertising all the land for sale on August 21st. The manner of this sale was to be materially different from the one previously advertised for August 16th, in that the property would first be offered for sale as four separate tracts and then as a whole, the highest bid or bids to take the property. The second advertisement appeared in the *Times* for the first time on July 29, 1965. Thereafter, it was republished on August 5th, 12th, and 19th. It described each of the four tracts by metes and bounds and as containing 38.8 acres, 27.1 acres, 55.3 acres, and 4.3 acres respectively. Pursuant to these advertisements, on August 21, 1965, the town attorney offered the property for sale at public auction. When the tracts were sold separately, the bids totaled $61,700.00. When the land was offered in gross, plaintiff became the highest bidder at $72,500.00, and immediately gave his check to defendant for the required 10% deposit. On August 23, 1965, the Board of Aldermen met in a called session and duly authorized the town attorney "to take any legal steps he feels necessary to properly complete the Country Club property sale and get payment by the specified date of October 1, 1965." The minutes show no other entry with reference to this sale.

Sometime between August 23rd and August 30th, "the Allison Brothers" submitted a bid of $80,000.00 to the Town for the prop-

erty. The Board of Aldermen met on August 30th and "accepted an offer of $80,000.00 for the Country Club property, together with an additional proposal and a good-faith check in the amount of $10,-000.00 from the Allison Brothers. The town treasurer was authorized to deposit this check in a Savings Account awaiting the final sale of the property on October 9, 1965." The town attorney was authorized "to readvertise the Country Club property for sale October 9, 1965, at 10:00, at the door of the City Hall." His instructions were to advertise that the opening bid at this sale would be $80,000.00 and that this sale would be final. This time the property was advertised as one tract, described by metes and bounds as containing 132.98 acres, more or less, from which 7.77 described acres and lots 35 and 36 in section 2 of Montclove Estates were excepted.

On September 22, 1965, plaintiff instituted this action, alleging that on August 23, 1965, he entered into a binding contract with the Town to purchase the Country Club property; that defendant has refused his repeated demands for a deed to the property; and that he tenders the balance due on the purchase price of $72,500.00. His prayer for relief is: (1) that the Town be required to specifically perform its contract with him by executing and delivering to him a deed to the property in question, and (2) that defendant be restrained from reselling the County Club property. On October 5th, four days prior to the proposed sale date, Judge Campbell issued a temporary injunction prohibiting the sale on October 9th. When the matter came on for hearing, the parties waived a jury trial, and Judge Campbell heard the case upon the merits. He entered judgment in which he made findings of fact substantially as set out above and concluded as a matter of law:

"That the Town of Brevard did not advertise the Country Club property for sale for a period of thirty (30) days as required under the provisions of North Carolina General Statutes 160-59, and therefore any purported sale on August 21, 1965, is a nullity."

He adjudged that the purported sale to plaintiff was void and that plaintiff is not entitled to a deed to the property. From this judgment plaintiff appealed. Pending the appeal, Judge Campbell continued the restraining order.

*Hamlin, Ramsay and Monday and Williams, Williams and Morris for plaintiff appellant.*

*Potts & Hudson for defendant appellee.*

SHARP, J. If the sale which the attorney for the Town of Brevard purported to conduct on August 21, 1965, was properly advertised, the action of the Board of Aldermen on August 23rd amounted to an approval and affirmation of it, and plaintiff will be entitled to a deed to the property. The question presented by this appeal, therefore, is: Was the purported sale of August 21st held in conformity with G.S. 160-59? This statute, in pertinent part, provides:

> "The governing body of any city or town shall have power at all times to sell at public outcry, after thirty days' notice, to the highest bidder, any property, real or personal, belonging to any such town, and apply the proceeds as they may think best. . . ."

Plaintiff, of course, cannot contend that 30 days elapsed between July 29th and August 21st, the date of the sale at which he became the last and highest bidder. His contention is that the time should be counted from July 22nd, the date on which the land was first advertised for sale. This contention, however, is untenable. The first advertisement gave notice of a sale to be held on August 16th — not August 21st. Furthermore, the four later notices announcing the sale of this property, together with the additional lot, on August 21st, described the property in terms of four separate tracts which would be sold individually and in gross.

Only two cases in this jurisdiction have been called to our attention in which a sale of municipal real estate was attempted without the statutory notice of 30 days. In *Carstarphen v. Town of Plymouth,* 180 N.C. 26, 103 S.E. 899, on one night, the mayor and councilmen passed a resolution looking to the sale of the town's one building, which contained its "lock-up," market, and city hall; on the next night, they attempted to sell this property at a public meeting attended by 75 people. Before the sale was consummated, a restraining order was issued and made permanent. On appeal, this court affirmed on the double basis that the councilmen were without authority to sell real estate devoted to governmental purposes and that "said sale, or attempted sale, was not made after thirty days' public notice, as required by Rev., 2978 (now G.S. 160-59)."

In *City of Asheville v. Herbert,* 190 N.C. 732, 130 S.E. 861, the mayor and commissioners attempted to sell 90 acres of the City's land, the "Ryerson property," to defendants at a private sale. When they refused to accept the deed, the City brought suit to compel specific performance of their contract. The trial court held that the tendered deed was valid, and ordered defendants to pay the purchase

price in accordance with their contract. On appeal, this Court reversed, saying:

"(T)he 'Ryerson property' is such as can be sold by the plaintiff, provided the method of sale required by law is followed. \* \* \*

"(W)e are minded to conclude that both the plaintiff's charter and the general law, grant the power to sell the land in controversy, and that C.S. 2688 (now G.S. 160-59), must be complied with by plaintiff in order to make a valid sale thereof." *Id.* at 734, 736, 130 S.E. at 863-64.

It seems clear, therefore, that compliance with G.S. 160-59 is required before the Town of Brevard can make a valid sale of its Country Club property. This is also the rule elsewhere. "If the publication of notice fails to comply in substance with the law, especially as to the time of publication, a purchaser does not acquire a marketable title." 10 McQuillan, Municipal Corporations § 28.45 (3rd Ed. 1950). While it now appears that plaintiff will suffer, and that the Town will profit, from a number of inadvertencies on the part of one or more of its employees, yet the statute specifies the terms upon which cities and towns are empowered to sell their property. "All acts beyond the scope of the powers granted to a municipality are void." *City of Asheville v. Herbert, supra at* 735, 130 S.E. at 863.

The judgment of the court below is in all respects

Affirmed.

MOORE, J., not sitting.