IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-203

No. COA21-329

Filed 5 April 2022

Mecklenburg County, No. 18 CVS 21073

DAEDALUS, LLC, and EPCON COMMUNITIES CAROLINAS, LLC, Plaintiffs,

v.

CITY OF CHARLOTTE, Defendant.

Appeal by Defendant from Order entered 18 March 2021 by Judge Carla N. Archie in Mecklenburg County Superior Court. Heard in the Court of Appeals 11 January 2022.

*Milberg Coleman Bryson Phillips Grossman, PLLC, by James R. DeMay, Daniel K. Bryson, Martha A. Geer, Mark R. Sigmon, John Hunter Bryson, and Scarbrough, Scarbrough & Trilling, PLLC, by James E. Scarbrough, John F. Scarbrough, and Madeline J. Trilling, and Shipman & Wright, LLP, by Gary K. Shipman and William G. Wright, for Plaintiffs-Appellees.*

*Cranfill Sumner LLP, by Steven A. Bader, Patrick H. Flanagan, and Stephanie H. Webster, for Defendant-Appellant.*

HAMPSON, Judge.

**Factual and Procedural Background**

City of Charlotte (Defendant) appeals from Order entered in favor of Daedalus, LLC, Epcon Communities, LLC, and NVR, INC., (collectively Plaintiffs) on 18 March

2021 partially granting Plaintiffs' Motion for Summary Judgment. The Record before us reflects the following:

Defendant, a municipality organized under the laws of North Carolina, enacted an ordinance for the collection of water and sewage capacity fees.

At all relevant times, this Ordinance—Charlotte's City Ordinance § 23-12—mandated:

> Each applicant for water or sewer service shall pay the applicable capacity charge for the type and size of service connection requested. The capacity charge shall be arrived at in accordance with the water and sewer rate methodology documents as set forth in the schedule of current rates, fees, and charges.

As provided for in the Ordinance, Defendant determines the capacity fee amount utilizing the water and sewer rate methodology set forth in the Charlotte-Mecklenburg Utility Department Revenue Manual (Revenue Manual). The Revenue Manual provides:

> Capacity fees are one time fees paid at the time of application for a new service and are charged to pay for a portion of the capital costs associated with providing capacity to serve new growth.

The Revenue Manual also instructs Defendant to calculate the fees using the "buy-in" method. The "buy-in" method establishes the amount of the fee based on "the unit cost of capacity of the water and sewer system in a way that results in the cost of capacity being equal to that which existing customers of the system have paid."

¶ 4      The capacity fees are calculated and paid at the time property owners apply for new water and sewer service. Defendant also required property owners to pay a separate "connection fee" or "tap fee" to cover the cost of actually connecting the property to the water and sewer systems. Upon receipt of the capacity fee and connection/tap fee, Defendant began working to establish the connection—a process that typically took between four to six weeks. After property owners connect to the water and sewer system, they pay user rates based on their use of the water and sewer system. Defendant's ordinances state user rates should be used to pay for the debt incurred for construction of the water and sewer system, as well as for operation and maintenance expenses:

> Sec. 23-126. —Water System Operation.
>
> The amount necessary to meet the annual interest payable on the debt incurred for the construction for the water system; the amount necessary for the amortization of the debt; and the amount necessary for repairs, for fire protection, maintenance and operation of the system shall comprise the rate for water service collected by the city.
>
> Sec. 23-41. — System Operations.
>
> The amount necessary to meet the annual interest payable on the debt incurred for construction of the sewer system; the amount necessary for the amortization of the debt; and the amount necessary for repairs, maintenance, and operation for the system shall comprise the user charge for sewer service collected by the city.

¶ 5     While Defendant used the connection/tap fees to cover the costs associated with connecting the property to the infrastructure and the user fees to cover the costs associated with maintaining the infrastructure, Defendant does not have a stated use for the capacity fees. Instead, Defendant deposits the fees into its general water and sewer fund and "carries [the monies] forward over time." Defendant does not currently have a plan for spending the carried over monies, and instead, merely stated the funds would be spent by Defendant to "fund future operations."

¶ 6     Plaintiffs are developers/home builders who paid these capacity fees to Defendant in the fiscal years 2016-2018 as a mandatory precondition of connecting to Defendant's existing water and sewer infrastructure. The current litigation arose when Plaintiffs filed a Complaint on 5 November 2018, alleging Defendant's collection of capacity fees for the fiscal years 2016-2018 constituted an unlawful ultra vires action. On 13 September 2019, Plaintiff filed a Second Amended and Supplemental Complaint,[1] alleging the collection of capacity fees for the fiscal years 2019-2020 constituted an unlawful ultra vires action, or in the alternative, the fees violated Plaintiffs' equal protection and substantive due process rights because the fees charged had no reasonable relationship or rational nexus to the impact, if any, that new customers have on Defendant's water or sewer systems.

---

[1] Plaintiff filed a Motion to Amend the Complaint on 6 August 2019, which was granted on 10 September 2019.

¶ 7 After Plaintiffs filed their Second Amended Complaint on 13 September 2019, Defendant filed an Answer on 23 October 2019. Thereafter, both parties filed motions for summary judgment. The trial court heard the matter on 18 December 2019 and issued an Order Partially Granting Plaintiffs' Motion for Summary Judgment and Partially Granting Defendant's Motion for Summary Judgment on 2 October 2020. With regard to the capacity fees collected during the fiscal years 2016, 2017, and 2018, the trial court found "there are no genuine issues of material fact[,]" and concluded the assessment and collection of capacity fees during the fiscal years 2016, 2017, and 2018 were ultra vires. With regard to Plaintiffs' Second Claim for Relief, the alleged ultra vires action of collecting capacity fees during fiscal years 2019 and 2020, the trial court found "there are genuine issues" of material fact and scheduled the matter for trial. However, the trial court also concluded Defendant's assessment and collection of capacity fees during the fiscal years 2019 and 2020 are "not an exaction constituting a governmental taking and Plaintiffs have an adequate remedy at law."

¶ 8 After the entry of the Order, Plaintiffs, with Defendant's consent, filed a Motion to Amend Order to Correct Clerical Error pursuant to Rule 60(a) on 27 October 2020. In the Motion to Amend, Plaintiffs identified several clerical errors in the Order, including references to fiscal years 2018 and 2019, as opposed to fiscal years 2019 and 2020, and references to "Defendant's Claims for Relief," instead of

"Plaintiffs' Claims for Relief." In response to the Rule 60(a) Motion, the trial court issued an Amended Order on 4 November 2020.

¶ 9 On the same day, Defendant filed a Motion for Certification of Judgment requesting the trial court certify the Order for immediate appeal with no just reason for delay pursuant to Rule 54(b). Plaintiffs consented to the Motion to Certify in a Joint Motion to Amend Order filed on 17 March 2021. The Joint Motion to Amend also moved for amendment of the Order pursuant to Rule 60(a) in order to clarify that "a neutral, third-party Referee under Rule 53 [should] calculate the amount of refunded capacity fees plus interest to class members" and add language stating, "that this Order is certified for appeal with no just reason for delay pursuant to Rule 54(b) of the Rules of Civil Procedure." In response to the Joint Motion, the trial court entered the Second Amended Order on 18 March 2021. Thereafter, on 14 April 2021, Defendant filed Notice of Appeal from the Second Amended Order.

## **Appellate Jurisdiction**

¶ 10 Plaintiffs and Defendant acknowledge the Order appealed from is interlocutory, as the referee has not yet calculated the damages for the years 2016-2018 and the ultra vires claim for the years 2019-2020 has not yet been resolved. Nevertheless, Defendant contends they are entitled to immediate appellate review because (1) the trial court certified the order for immediate review under Rule 54(b); (2) the Order affects a substantial right because after the referee's final ruling,

Defendant will be required to pay a significant sum of money to Plaintiffs; and (3) Defendant filed a separate petition for a writ of certiorari under North Carolina Rule of Civil Procedure 21 contemporaneously with this brief.

A. Rule 54(b) certification

¶ 11 "[A]ppeal lies of right directly to the Court of Appeals . . . from any final judgment of a superior court . . ." N.C. Gen. Stat. § 7A-27(b)(1) (2021). "A final judgment is one which disposes of the cause as to all the parties, leaving nothing to be judicially determined between them in the trial court." *Veazey v. Durham*, 231 N.C. 357, 361-62, 57 S.E.2d 377, 381 (1950) (citation omitted). Whereas, "[a]n interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy." *Id.* at 362, 57 S.E.2d at 381.

¶ 12 Generally, there is no right to appeal from an interlocutory order. *Jeffreys v. Raleigh Oaks Joint Venture*, 115 N.C. App. 377, 379, 444 S.E.2d 252, 253 (1994). "However, immediate appeal of interlocutory orders and judgments is available in at least two instances: when the trial court certifies, pursuant to N.C.G.S. § 1A-1, Rule 54(b), that there is no just reason for delay of the appeal; and when the interlocutory order affects a substantial right under N.C.G.S. §§ 1-277(a) and 7A-27(d)(1)." *Turner v. Hammocks Beach Corp.*, 363 N.C. 555, 558, 681 S.E.2d 770, 773 (2009) (citation and quotation marks omitted).

¶ 13    Here, the trial court did not certify this case for immediate review in its initial Summary Judgment Order, but rather attempted to add a certification in its Second Amended Order under Rule 60(a).  N.C. Gen. Stat. § 1A-1, Rule 60(a) provides "[c]lerical mistakes in judgments, orders, or other parts of the record and errors therein arising from oversight or omission may be corrected by the judge . . ."  N.C. Gen. Stat. § 1A-1, Rule 60(a) (2021).  Thus, "[w]hile Rule 60[a] allows the trial court to correct clerical mistakes in its order, it does not grant the trial court the authority to make substantive modifications to an entered judgment." *Food Serv. Specialists v. Atlas Rest. Mgmt.*, 111 N.C. App. 257, 259, 431 S.E.2d 878, 879 (1993).  "A change in an order is considered substantive and outside the boundaries of Rule 60(a) when it alters the effect of the original order." *Buncombe Cnty. ex rel. Andres v. Newburn*, 111 N.C. App. 822, 825, 433 S.E.2d 782, 784 (1993).  This Court has previously held "Rule 60(a) is not an appropriate means for seeking an amendment to an order or judgment to add the trial court's Rule 54(b) certification" because a Rule 54(b) certification substantially alters the effect of the original order and allows the party "to circumvent the established procedural rules governing the bringing of an appeal." *Pratt v. Staton*, 147 N.C. App. 771, 774-75, 556 S.E.2d 621, 624 (2001).  *See e.g.*, *Newcomb v. Cnty. of Carteret*, 207 N.C. App 527, 701 S.E.2d 325 (2010); *Branch Banking & Trust Co. v. Peacock Farm, Inc.*, 241 N.C. App. 213, 219, 772 S.E.2d 495, 500 (2015).

¶ 14        Here, since the trial court did not include the Rule 54(b) certification in the original Order and did not have the authority under Rule 60(a) to make a substantive modification to the Order by adding a Rule 54(b) certification, the subsequent Rule 54(b) certification is ineffective to vest appellate jurisdiction.

### B. Substantial Right

¶ 15        Defendant next contends the Second Amended Order affects a substantial right because it involves the payment of a significant sum of money. A substantial right is one "materially affecting those interests which a person is entitled to have preserved and protected by law . . . ." *Gunter by Zeller v. Maher*, 264 N.C. App. 344, 346, 826 S.E.2d 557, 560 (2019) (citation and quotation marks omitted). "Whether or not a substantial right will be prejudiced by delaying an interlocutory appeal must be decided on a case-by-case basis." *Walden v. Morgan*, 179 N.C. App. 673, 677, 635 S.E.2d 616, 620 (2006) (citation and quotation marks omitted).

¶ 16        Orders that compel the *immediate* payment of a significant amount of money may affect a substantial right. *Est. of Redden v. Redden*, 179 N.C. App. 113, 116-17, 632 S.E.2d 794, 798 (2006) (emphasis added). However, "an order determining only the issue of liability and leaving unresolved other issues such as that of damages cannot be held to 'affect a substantial right.'" *Johnston v. Royal Indem. Co.*, 107 N.C. App. 624, 625, 421 S.E.2d 170, 171 (1992) (citing *Tridyn Indus., Inc. v. Am. Mut. Ins. Co.*, 296 N.C. 486, 491, 251 S.E.2d 443, 447 (1979)). *But c.f.*, *Beck v. Am. Bankers Life*

*Assurance Co.*, 36 N.C. App. 218, 221, 243 S.E.2d 414, 416 (1978) (concluding defendant's filing of supersedeas bond for $21,500.73 was sufficient to convert the partial summary judgment into a final judgment that defendant could appeal from even though the order left it up to the parties to determine the exact amount defendant had to pay). Furthermore, our Supreme Court has held an appeal from "the order of compulsory reference, before judgment upon the report of the referee, is premature and fragmentary and must be dismissed." *Rudisill v. Hoyle*, 254 N.C. 33, 46, 118 S.E.2d 145, 154 (1961) (citing *LeRoy v. Saliba*, 182 N.C. 757, 108 S.E. 303 (1921)).

¶ 17 Here, the referee has not submitted their report with the damage calculation and Defendant has not filed any subsequent documents, like a supersedeas bond, representing the amount of Defendant's liability. Thus, although it appears the trial court's Order would result in Defendant eventually being required to pay Plaintiffs a significant sum of money, the Order does not compel the *immediate* payment of money. Consequently, the Order does not affect a substantial right and is therefore, subject to dismissal because the appeal is "fragmentary and premature." *See Rudisill*, 254 N.C. at 46, 118 S.E.2d at 154.

### C. Writ of Certiorari

¶ 18 Nevertheless, Defendant has also filed a Writ of Certiorari. Under Rule 21 of the North Carolina Rules of Appellate Procedure:

> The writ of certiorari may be issued in appropriate circumstances by either appellate court to permit review of the judgments and orders of trial tribunals when the right to prosecute an appeal has been lost by failure to take timely action, or when no right of appeal from an interlocutory order exists . . . .

N.C.R. App. P. 21(1). Thus, "[i]t is an appropriate exercise of this Court's discretion to issue a writ of certiorari in an interlocutory appeal where . . . there is merit to an appellant's substantive arguments, and it is in 'the interests of justice' to treat an appeal as a petition for writ of certiorari." *Zaliagiris v. Zaliagiris*, 164 N.C. App. 602, 606, 596 S.E.2d 285, 289 (2004) (quoting *Sack v. N.C. State Univ.*, 155 N.C. App. 484, 490, 574 S.E.2d 120, 126 (2002)).

¶ 19        In this case, a writ of certiorari may be appropriately considered because no right of appeal exists from the trial court's interlocutory Order. Furthermore, it is plainly apparent the Order affects numerous parties and involves a substantial amount of potential liability. Moreover, it appears the central issue presented in this appeal is a vital threshold issue upon which the remaining and extensive litigation to follow hinges. Consequently, because of the significant impact of this lawsuit and the need for efficient administration of justice, we exercise our discretion to reach the merits of Defendant's appeal from the trial court's interlocutory Order and grant the petition for Writ of Certiorari.

**Issues**

The dispositive issue on appeal is whether the trial court erred, as a matter of law, in concluding Defendant's collection of capacity fees for fiscal years 2016-2018 was an ultra vires action.[2]

## Analysis

Defendant contends the capacity fees it charged during fiscal years 2016-2018 were not ultra vires because Defendant (1) provided users with contemporaneous service at the time they paid the capacity fee; and (2) used revenue from capacity fees to pay existing debt on revenue bonds.

In North Carolina, cities "exist solely as political subdivisions of the State and are creatures of statute." *Davidson Cnty. v. City of High Point*, 321 N.C. 252, 257, 362 S.E.2d 553, 557 (1987). As such, cities have "no inherent powers, and can exercise only such powers as are expressly conferred by the General Assembly and such as are necessarily implied by those expressly given." *High Point Surplus Co. v. Pleasants*, 264 N.C. 650, 654, 142 S.E.2d 697, 701 (1965). "All acts beyond the scope of the power granted to a municipality are void." *City of Asheville v. Herbert*, 190 N.C. 732, 735, 130 S.E. 861, 863 (1925) (citations omitted).

---

[2] Because of our decision in this case, it is not necessary for us to reach the issue presented in Plaintiffs' cross-appeal that the trial court erred in granting Summary Judgment for Defendant on Plaintiffs' Alternative Claims for Relief that the capacity fees charged prior to 1 July 2018 were unreasonable under *Homebuilders Ass'n of Charlotte, Inc. v. City of Charlotte*, 336 N.C. 37, 442 S.E.2d 45 (1994).

¶ 23    The General Assembly expressly conferred the power to charge water and sewer fees upon cities in N.C. Gen. Stat. § 160A-314(a). *Quality Built Homes, Inc. v. Town of Carthage*, 369 N.C. 15, 19, 789 S.E.2d 454, 458 (2016). The version of N.C. Gen. Stat. § 160A-314(a) in effect during the fiscal years 2016-2018 provided, in relevant part, "[a] city may establish and revise . . . rents, rates, fees, charges, and penalties for the use of or the services furnished by any public enterprise." N.C. Gen. Stat. § 160A-314(a) (2013).

¶ 24    Our Supreme Court interpreted this version of the statute in *Quality Built Homes*. There, the city of Carthage charged impact fees to "offset . . . costs to expand the system to accommodate development." *Quality Built Homes*, 369 N.C. at 17, 789 S.E.2d at 456 (alteration in original). The impact fees were charged either: (1) at the time of final subdivision plat approval if the development required the subdivision of land; or (2) if the subdivision had already occurred, either at the time of tap fees or the issuance of a building permit. *Id.* The Court concluded the enabling statute, N.C. Gen. Stat. § 160A-314(a), conferring upon cities the power to charge water and sewer fees "for the use of or the services furnished[,]" used language "operative in the present tense[,]" and thus, only authorized cities to charge fees "for the contemporaneous use of its water and sewer services—not to collect fees for future discretionary spending." *Id.* at 20, 789 S.E.2d at 458. Applying this interpretation of the enabling statute to the fees at issue, the Court held Carthage's impact fees

were not for any "contemporaneous use" because: (1) the fees were charged to a property "to be served" by the town and were "not assessed at the time of actual use" of the water and sewer system; and (2) the fees were not "tap fees" to pay for the actual cost of the connection. *Id.* at 21, 789 S.E.2d at 458-59.

¶ 25 Following *Quality Built Homes*, the General Assembly enacted HB 436, the Public Water and Sewer System Development Fee Act, N.C. Gen. Stat. § 162A-201, *et seq.*, effective 1 October 2017, which prospectively authorized cities to charge water and sewer impact fees, called "system development fees," in order "to fund the costs of capital improvements necessitated by and attributable to such new development, to recoup costs of existing facilities which serve such new development, or a combination of those costs . . ." N.C. Gen. Stat. § 162A-201(9) (2021). However, "[n]othing in [the] act provides retroactive authority for any system development fee . . . ." An Act to Provide for Uniform Authority to Implement System Development Fees for Public Water and Sewer Systems in North Carolina and to Clarify the Applicable Statute of Limitations, S.L. 2017-138, § 11, 2017 N.C. Sess. Laws 996, 1002. Thus, the statute does not apply to fees charged before 1 October 2017.

¶ 26 After the enactment of N.C. Gen. Stat. § 162A-201 in 2017, this Court decided *Kidd Constr. Grp., LLC v. Greenville Utils. Comm'n*, 271 N.C. App. 392, 845 S.E.2d 797 (2020). There, starting in 2008, the city of Greenville began charging capacity fees at the time of a developer's application for water and sewer service. *Id.* at 395,

845 S.E.2d at 798. According to Greenville, they began charging the fees to "recover a proportional share of the cost of capital facilities constructed to provide service capacity for new development or new customers connecting to the water/sewer system." *Id.* Just as in *Quality Built Homes*, the capacity fees were charged in addition to a tapping fee, which covered the cost for physically making a service tap. *Id.*

¶ 27     We held Greenville lacked the authority to charge the capacity fees prior to the enactment of N.C. Gen. Stat. § 162A-201 in 2017 because even though the city did not condition final plat approval and the issuance of building permits upon the payment of fees, like in *Quality Built Homes*, the fees were still not for "contemporaneous use" as contemplated by the enabling statute. *Id.* at 399, 845 S.E.2d at 801. This Court reasoned the fees were not contemporaneous because the sole purpose of the fee was "to provide service capacity for new development or new customers connecting to the water/sewer system" and another fee is imposed simultaneously to cover the cost of actually connecting the property to the water and sewer systems. *Id.* at 395, 845 S.E.2d at 798-99. Thus, new customers did not receive any concurrent service for the capacity fee and N.C. Gen. Stat. § 160A-214(a) only empowered Greenville to charge fees for "services rendered"—not "for future discretionary spending on water and sewer expansion projects." *Id.* at 401, 845 S.E.2d at 802.

¶ 28    Defendant contends its capacity fee is "distinct, in all material respects, from the fees in both *Quality Built Homes* and *Kidd*." Specifically, Defendant contends its capacity fee differs from the fees in *Quality Built Homes* and *Kidd* because Defendant collected the fee at the time a user requested service, not at the time the property owner sought building approval, and upon receipt of the fee Defendant "reserved" specific capacity space. However, Defendant's capacity fees are identical in relevant part to Greenville's capacity fees we held were ultra vires, as both fees were charged to pay for the capacity costs associated with serving new growth; the fees were paid at the time of the application for a new service; and the service connection fees consisted of two components: a tapping fee and a capacity fee.

¶ 29    Furthermore, Defendant cannot identify any contemporaneous use of the water and sewer system property owners receive for the payment of the fees. Although Defendant argues the fees were used to pay for existing debt on revenue bonds, Defendant's City Ordinance § 23-12 mandates *user rates* should be used to pay for this debt—not capacity fees. Likewise, the capacity fees were not used to pay for the actual cost of tapping into the system, as a separate tap fee covers that cost. Capacity fees, by Defendant's own admission, are merely deposited into Defendant's general water and sewer fund and "carrie[d] forward over time" to "fund future operations."

¶ 30        Thus, the undisputed evidence shows Defendant's fees were charged for future discretionary spending and not for contemporaneous use of the system or for services furnished.    Therefore, in accordance, with *Quality Built Homes* and *Kidd*, we necessarily conclude Defendant's action of charging capacity fees for the fiscal years 2016-2018 was not authorized by the previous version of N.C. Gen. Stat. § 160A-314(a) and was ultra vires.    Consequently, the trial court did not err in partially granting Plaintiff's Motion for Summary Judgment.

## **Conclusion**

¶ 31        Accordingly, for the foregoing reasons, we affirm the trial court's 18 March 2021 Order.

AFFIRMED.

Judges ARROWOOD and CARPENTER concur.