IN THE SUPREME COURT OF NORTH CAROLINA

No. 315PA15

Filed 19 August 2016

QUALITY BUILT HOMES INCORPORATED and STAFFORD LAND COMPANY, INC.

v.

TOWN OF CARTHAGE

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous, unpublished decision of the Court of Appeals, ___ N.C. App. ___, 776 S.E.2d 897 (2015), affirming an order allowing summary judgment entered on 17 October 2014 by Judge James M. Webb in Superior Court, Moore County. On 5 November 2015, the Supreme Court allowed defendant's conditional petition for discretionary review as to additional issues. Heard in the Supreme Court on 17 May 2016 in session in the Old Burke County Courthouse in the City of Morganton pursuant to N.C.G.S. § 7A-10(a).

Ferguson, Hayes, Hawkins & DeMay, PLLC, by James R. DeMay; and Scarbrough & Scarbrough, PLLC, by James E. Scarbrough, for plaintiff-appellants/appellees.

Cranfill Sumner & Hartzog LLP, by Susan K. Burkhart, for defendant-appellant/appellee.

Law Office of John T. Benjamin, Jr., P.A., by John T. Benjamin, Jr. and William E. Hubbard, for Leading Builders of America, amicus curiae.

Robinson, Bradshaw & Hinson, P.A., by Edward F. Hennessey; and J. Michael Carpenter, General Counsel, for North Carolina Home Builders Association, Inc., amicus curiae.

*Ellis & Winters LLP, by Matthew W. Sawchak and Paul M. Cox; and F. Paul Calamita for North Carolina Water Quality Association, amicus curiae.*

NEWBY, Justice.

In this case we consider whether the Town of Carthage exceeded its municipal authority under the Public Enterprise Statutes, N.C.G.S. §§ 160A-311 to -338 (2015), by adopting certain water and sewer "impact fee" ordinances. Upon approval of a subdivision of real property, the ordinances trigger immediate charges for future water and sewer system expansion, regardless of whether the landowner ever connects to the system or whether Carthage ever expands the system. As creations of the legislature, municipalities have only those powers delegated to them by the General Assembly. When Carthage adopted the ordinances at issue here, it exercised power that it had not been granted. The impact fee ordinances are therefore invalid and, accordingly, we reverse the decision of the Court of Appeals.

In 2003, following a period of rapid population growth, Carthage adopted two similar impact fee ordinances: one pertaining to its water system, and the other pertaining to its sewer system. In their current form, the ordinances state that the impact fees "shall be used to cover the costs of expanding the [water and sewer] system[s]." Carthage, N.C., Code §§ 51.076(F) (water), 51.096(H) (sewer) (2015). These costs include "water treatment plant expansion, elevated storage expansion,

and transmission mains" for the water system, *id.* § 51.076(F), and "gravity mains, force mains, and lift stations" for the sewer system, *id.* § 51.096(H).

Under both ordinances, a landowner who seeks to subdivide property and receives "final plat approval," *id.* §§ 51.076(C)(1), 51.096(B), must pay water and sewer impact fees "based on water meter size according to the town's fee schedule," *id.* §§ 51.076(B), 51.096(A), in amounts ranging from $1,000 to $30,000 per connection. Carthage, N.C., Fee and Rate Schedule 4 (July 1, 2016). "If a [property] has received its final plat, then the entire [water and sewer] impact fee[s] shall be paid at the earliest or next occurrence of . . . [the] (a) Tap fee; or (b) Development permit." *Id.* §§ 51.076(C)(2), 51.096(C); *see also* Fee and Rate Schedule 4 ("Water/Sewer Impact Fees are due upon final plat approval for new subdivisions (major or minor) or upon application for building permit, whichever occurs first."). Tap fees cover Carthage's costs "to 'tap' or access" the "water and/or sewer line that exists in front of the property," whereas "impact fees offset . . . costs to expand the system to accommodate development."

Impact fees are assessed "in addition to the regular water and sewer tap fees," and the monthly service charges to water and sewer customers. If a property owner does not pay the impact fees, Carthage "will refuse" to issue building permits. Certain exceptions exist "for temporary or emergency service," *id.* § 51.076(A)(2)(b), and any service solely for "fire protection," *id.* §§ 51.076(E), 51.096(G), but in all instances, impact fees are assessed regardless of the property owner's actual use of the systems

or whether Carthage actually expands the systems. In 2014 Carthage's Town Manager reported that the Town had "neglected to make needed improvements to its water and sewer systems for many years."

Plaintiffs are North Carolina corporations engaged in residential homebuilding. At the time of filing their action, plaintiffs had paid Carthage a total of $123,000 in water and sewer impact fees.

On 28 October 2013, plaintiffs filed their complaint seeking, *inter alia*, a declaratory judgment and monetary damages.[1] Plaintiffs allege that "Carthage has acted outside the scope of its legal authority" by "charging" the impact fees "without a specific delegation of authority from the General Assembly" and that, accordingly, plaintiffs are entitled to a return of all impact fees paid, plus interest and attorneys' fees.

Carthage timely answered the complaint, contending that "the water and sewer fees imposed by Defendant were authorized by North Carolina's Public Enterprise Statute" and asserting various affirmative defenses, including, *inter alia*, the statute of limitations and estoppel. All parties moved for summary judgment. On 17 October 2014, the trial court entered an order granting summary judgment for Carthage. Plaintiffs appealed the summary judgment order to the Court of Appeals.

---

[1] Not at issue here, on 23 June 2014, plaintiffs amended their complaint to, *inter alia*, add equal protection and due process claims.

The Court of Appeals affirmed the trial court's grant of summary judgment in favor of Carthage. *Quality Built Homes Inc. v. Town of Carthage*, ___ N.C. App. ___, 776 S.E.2d 897, 2015 WL 4620404 (2015) (unpublished). Applying "broad construction" interpretation principles under N.C.G.S. § 160A-4, the Court of Appeals concluded that Carthage acted within its delegated municipal authority to impose and collect the impact fees under the Public Enterprise Statutes, *Quality Built Homes*, 2015 WL 4620404, at *4-5 (citing, *inter alia*, N.C.G.S. § 160A-4 (2013); *Homebuilders Ass'n of Charlotte v. City of Charlotte*, 336 N.C. 37, 43-44, 442 S.E.2d 45, 50 (1994); and *Town of Spring Hope v. Bissette*, 305 N.C. 248, 252, 287 S.E.2d 851, 854 (1982)), which enable municipalities to "establish and revise . . . schedules of rents, rates, fees, charges, and penalties for the use of or the services furnished by any public enterprise," N.C.G.S. § 160A-314(a).[2]

We allowed both plaintiffs' petition and defendant's conditional petition for discretionary review. We review matters of statutory interpretation de novo, *In re Ernst & Young, LLP*, 363 N.C. 612, 616, 684 S.E.2d 151, 154 (2009) (citations omitted), as well as orders granting summary judgment, viewing the allegations as true and "the presented evidence in a light most favorable to the nonmoving party," *Dalton v. Camp*, 353 N.C. 647, 651, 548 S.E.2d 704, 707 (2001) (citation omitted).

---

[2] Because of its resolution of the matter, the Court of Appeals did not reach the statute of limitations or estoppel issues. *Quality Built Homes*, 2015 WL 4620404 at *5. Moreover, the court overruled plaintiffs' argument that they are entitled to recover attorneys' fees and costs. *Id.* at *6.

From the very formation of our State government, municipalities, in their various forms, have been considered "creatures of the legislative will, and are subject to its control." *Lutterloh v. City of Fayetteville*, 149 N.C. 65, 69, 62 S.E. 758, 760 (1908); *see King v. Chapel Hill*, 367 N.C. 400, 405, 758 S.E.2d 364, 369 (2014); *Bd. of Trs. of Youngsville Twp. v. Webb*, 155 N.C. 379, 384-85, 71 S.E. 520, 522 (1911). Fundamental to our system is the legislature's ability to confer upon municipalities certain authority needed to effectuate the purposes of government. N.C. Const. art. VII, § 1 ("The General Assembly shall provide for the organization and government . . . of counties, cities and towns, and . . . may give such powers and duties to . . . [them] as it may deem advisable."); *White v. Comm'rs of Chowan Cty.*, 90 N.C. 437, 438 (1884) ("[Municipalities] contribute largely to the life-principle of American liberty, and are . . . invested with appropriate corporate functions . . . [which] may be enlarged, abridged or modified at the will of the legislature . . . ."); *see also* 1 William Blackstone, *Commentaries* \*470 ("[Municipalities] are erected for the good government of a town or particular district . . . .")

The General Assembly delegates express power to municipalities by adopting an enabling statute, which includes "implied powers . . . essential to the exercise of those which are expressly conferred." *O'Neal v. Wake County*, 196 N.C. 184, 187, 145 S.E. 28, 29 (1928); *see Lanvale Props., LLC v. County of Cabarrus*, 366 N.C. 142, 150, 731 S.E.2d 800, 807 (2012); *Town of Saluda v. County of Polk*, 207 N.C. 180, 186, 176 S.E. 298, 301-02 (1934). "All acts beyond the scope of the powers granted to a

municipality are [invalid]." *City of Asheville v. Herbert*, 190 N.C. 732, 735, 130 S.E. 861, 863 (1925) (citations omitted).

When determining the extent of legislative power conferred upon a municipality, the plain language of the enabling statute governs. *Smith Chapel Baptist Church v. City of Durham*, 350 N.C. 805, 811, 517 S.E.2d 874, 878 (1999) (citation omitted). If the "language of [the enabling] statute is clear and unambiguous, there is no room for judicial construction, and the courts must give it its plain and definite meaning." *Id.* at 811, 517 S.E.2d at 878 (quoting *Lemons v. Old Hickory Council, BSA*, 322 N.C. 271, 276, 367 S.E.2d 655, 658 (1988)). "[A] statute clear on its face must be enforced as written." *Bowers v. City of High Point*, 339 N.C. 413, 419-20, 451 S.E.2d 284, 289 (1994) (citation omitted).

If the enabling statute is ambiguous, the "legislation 'shall be broadly construed . . . to include any additional and supplementary powers that are reasonably necessary or expedient to carry them into execution and effect.' " *King*, 367 N.C. at 405, 758 S.E.2d at 369 (citation omitted) (quoting N.C.G.S. § 160A-4). The "broad construction" mandate of section 160A-4 is "a rule of statutory construction rather than a general directive," *Lanvale Props.*, 366 N.C. at 154, 731 S.E.2d at 809, and, as such, is inoperative when the enabling statute is clear and unambiguous on its face, *see id.* at 154-55, 731 S.E.2d at 809-10 (citations omitted).

Carthage asserts that under the Public Enterprise Statutes it has broad authority to "collect monies" for the "operation, maintenance and expansion" of its water and sewer systems, and that such authority extends to the collection of impact fees. Carthage claims that "impact fees" fall squarely within its "authority to charge 'fees' or 'charges' " under N.C.G.S. § 160A-314. We disagree. While the enabling statutes allow Carthage to charge for the contemporaneous use of its water and sewer systems, the plain language of the Public Enterprise Statutes clearly fails to empower the Town to impose impact fees for future services.

The enabling statutes at issue here provide, in pertinent part, that "[a] city may establish and revise . . . rents, rates, fees, charges, and penalties for the use of or the services furnished by any public enterprise," N.C.G.S. § 160A-314(a), that "[a] city shall have authority to acquire, construct, establish, enlarge, improve, maintain, own, operate, and contract for the operation of any or all of the public enterprises . . . to furnish services," *id.* § 160A-312(a), and that "a city shall have full authority to finance the cost of any public enterprise by levying taxes, borrowing money, and appropriating any other revenues therefor," *id.* § 160A-313.

These enabling statutes clearly and unambiguously empower Carthage to charge for the contemporaneous use of water and sewer services—not to collect fees for future discretionary spending. *See Smith Chapel*, 350 N.C. at 811, 517 S.E.2d at 878 (finding that the "plain language" of N.C.G.S. § 160A-314 is "clear and unambiguous"). A municipality's ability to "establish and revise" its various "fees" is

limited to "the use of" or "the services furnished by" the enterprise, which provisions are operative in the present tense. *See Dunn v. Pac. Emp'rs Ins. Co.*, 332 N.C. 129, 134, 418 S.E.2d 645, 648 (1992) ("Ordinary rules of grammar apply when ascertaining the meaning of a statute . . . ." (citations omitted)).

Though the enabling statutes allow municipalities to charge for "services furnished," unlike similar *county* enabling statutes, the language at issue here fails to authorize Carthage to charge for services "*to be* furnished." *See McNeill v. Harnett County*, 327 N.C. 552, 570, 398 S.E.2d 475, 485 (1990) (holding that the latter part of the enabling phrase "services furnished or *to be furnished*," N.C.G.S. § 162A-88 (1987) (emphasis added) (governing county water and sewer districts), plainly allowed the county to charge for prospective services, which are "*not* limited to the financing of maintenance and improvements of *existing* customers").[3] Since 1982 this Court has cautioned that municipalities may lack the power to charge for prospective services absent the essential "to be" language. *Bissette*, 305 N.C. at 251, 287 S.E.2d at 853 (dictum) ("[W]e agree that under [N.C.G.S. § 160A-314(a)] a municipality may not charge for services 'to be furnished.'"). We simply cannot read language into a statute

---

[3] Enabling statutes pertaining to other entities employ the same "to be furnished" prospective language, which section 160A-314(a) does not. *E.g.*, N.C.G.S. § 162A-9 (2015) (enabling water and sewer authorities to "establish and revise a schedule of rates . . . for the services furnished or to be furnished"); *id.* § 162A-14(3) (enabling certain "governing bod[ies]" to "fix . . . charges . . . for the services furnished or to be furnished by any water system or sewer system of the authority"); *id.* § 162A-49 (2015) (same for district boards of metropolitan water districts). *Accord id.* §§ 162A-53(3), -72, -73(3), -85.13(a), -85.19(a)(3) (2015).

where it does not exist. *N.C. Dep't of Corr. v. N.C. Med. Bd.*, 363 N.C. 189, 201, 675 S.E.2d 641, 649 (2009) (We "presum[e] that the legislature carefully chose each word used." (citation omitted)); *Carlyle v. State Highway Comm'n*, 193 N.C. 36, 47, 136 S.E. 612, 619 (1927) ("If the courts attempt to read into the law words of their own . . . , then this would amount to erecting a legislative despotism of five men . . . .").

The language of the impact fee ordinances plainly points to future services, thus requiring Carthage to invoke prospective charging power. Both ordinances contemplate "expanding" the systems, including "plant" and "storage expansion," and the water impact fee is assessed on property that is "*to be* served" by the water system. The fees are not assessed at the time of actual use, but are payable in full at the time of "final [subdivision] plat approval"—a time when water, sewer, or other infrastructure might not have been built and only a recorded plat exists. Moreover, Carthage charges the impact fees in addition to tap fees, which are assessed when a property owner actually connects to the system. Indeed, plaintiffs were required to pay some impact fees before improving or establishing a need for services on their property. *Cf. Bissette*, 305 N.C. at 251-52, 287 S.E.2d at 853 (concluding that an increased rate on all customers to fund a new treatment plant "did not reflect any services yet to be furnished, but merely the same service which had previously been furnished").

Municipalities routinely seek and obtain enabling legislation from the General Assembly to assess impact fees. *E.g.*, Act of June 28, 1988, ch. 996, sec. 1, 1987 N.C.

Sess. Law (Reg. Sess. 1988) 178, 178 (enabling Rolesville to "provide by ordinance for a system of impact fees"); Act of June 23, 1987, ch. 460, sec. 13, 1987 N.C. Sess. Laws 609, 613 (same for Pittsboro); Act of July 8, 1986, ch. 936, sec. 1, 1985 N.C. Sess. Laws (Reg. Sess. 1986) 221, 221 (same for Chapel Hill); *see also Mills v. Bd. of Comm'rs of Iredell Cty.*, 175 N.C. 215, 218, 95 S.E. 481, 482 (1918) (noting that county demands for additional authority, such as "raising of proper funds . . . for improvements in some fixed place or in restricted territory . . . can only be conferred by legislative enactment" (citations omitted)).  Yet it appears that Carthage has elected not to pursue such legislation.

Furthermore, Carthage has the authority to charge tap fees and to establish water and sewer rates to fund necessary improvements and maintain services to its inhabitants, which is sufficient to address its expansion needs.  *See Bissette*, 305 N.C. at 251-52, 287 S.E.2d at 853 (concluding that the town validly increased rates on all customers to pay for "a necessary improvement to the already existing sewer system without which the Town could not continue to provide sewer service").

While the Public Enterprise Statutes at issue here enable Carthage to charge for the contemporaneous use of its water and sewer systems, the statutes clearly and unambiguously fail to give Carthage the essential prospective charging power necessary to assess impact fees.  Because the legislature alone controls the extension of municipal authority, the impact fee ordinances on their face exceed the powers delegated to the Town by the General Assembly, thus overstepping Carthage's

rightful authority. *See Smith Chapel*, 350 N.C. at 812, 517 S.E.2d at 879 (holding that "the [town's] ordinance on its face exceeds the express limitation of the plain and unambiguous reading of" the applicable Public Enterprise Statutes).

The ordinances are therefore invalid and, accordingly, we reverse the decision of the Court of Appeals, which affirmed the trial court's grant of summary judgment for the Town of Carthage. We conclude that discretionary review was improvidently allowed as to the remaining issues on appeal and remand this case to the Court of Appeals for consideration of the unresolved issues.

REVERSED AND REMANDED; DISCRETIONARY REVIEW IMPROVIDENTLY ALLOWED IN PART.