IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-48

Filed 6 February 2024

Guilford County, No. 19 CVS 3879

TRUE HOMES, LLC and D.R. HORTON, INC., on behalf of themselves and all others similarly situated, Plaintiffs,

v.

CITY OF GREENSBORO, Defendant.

Appeal by defendant from order entered 24 August 2022 by Judge Richard L. Doughton in Guilford County Superior Court. Heard in the Court of Appeals 18 October 2023.

> *Scarbrough, Scarbrough & Trilling, PLLC, by John F. Scarbrough; Milberg Coleman Bryson Phillips Grossman, PLLC, by Lucy Inman, James R. DeMay, Daniel K. Bryson, and John Hunter Bryson; and Shipman & Wright, LLP, by William G. Wright and Gary K. Shipman, for plaintiffs-appellees.*

> *Mullins Duncan Harrell & Russell PLLC, by Alan W. Duncan, Stephen M. Russell, Jr., and Tyler D. Nullmeyer, for defendant-appellant.*

DILLON, Chief Judge.

In this case, we consider whether the City of Greensboro's charging of capacity use fees exceeded its municipal authority under N.C. Gen. Stat. § 160A-314(a), prior to its 2017 amendment. We also consider whether Greensboro's fees were authorized by subsequent 2017 legislation.

## I.    Background

In 1988, Greensboro began charging capacity use fees under a city ordinance.[1] Greensboro's ordinance stated these capacity use fees were designed to help Greensboro recover the costs associated with expanding the city's water and sewer system to accommodate new development without increasing the costs for existing system users.  During the time period relevant to this case, the typical single-family house was charged $1,970 in capacity use fees, which were paid by the companies building the houses.

On 4 March 2019, residential real estate development and home building companies True Homes, LLC, and D.R. Horton ("Developers") brought suit against Greensboro,[2] alleging the City illegally collected its capacity use fees and seeking a refund of fees collected since 4 March 2016.  *See Quality Built Homes Inc. v. Town of Carthage*, 371 N.C. 60, 74, 813 S.E.2d 218, 228–29 (2018) (*Quality Built Homes II*) (restricting the statute of limitations to three years prior to the lawsuit's commencement).  The trial court subsequently granted Developers' motion for class certification under Rule 23 of our Rules of Civil Procedure, defining the class as all natural persons, corporations, or other entities who paid water and sewer capacity use fees to Greensboro since 4 March 2016.  The class's capacity use fees paid during

---

[1] In the Record, the city ordinance was originally Greensboro, N.C., Code § 22-5.1 (1988) but, by the year 1998, became Greensboro, N.C., Code § 29-53 (1998).

[2] Eastwood Construction, LLC, and Eastwood Development Corporation were originally plaintiffs as well, but they voluntarily dismissed their claims.

that period totaled $5,252,309.06.

The parties filed cross-motions for summary judgment. Greensboro also moved to strike portions of Developers' affidavits.

On 15 July 2022, the trial court granted summary judgment for Developers and denied Greensboro's motion to strike. The following month, on 24 August 2022, the trial court entered its judgment, ordering Greensboro to refund $5,252,309.06, plus pre- and post-judgment interest. Greensboro timely appealed.

## II. Analysis

Greensboro makes several arguments regarding the legality of its capacity use fees. Greensboro also argues that the trial court should have granted its motion to strike portions of Developers' affidavits. We address each argument in turn.

### A. Fees Collected Prior to 2017 Legislation

Greensboro first argues that the trial court erred in granting Developers' motion for summary judgment and simultaneously denying Greensboro's motion for summary judgment, concerning the fees collected prior to the 2017 legislation.

We review a summary judgment order *de novo*. *Forbis v. Neal*, 361 N.C. 519, 524, 649 S.E.2d 382, 385 (2007).

"Since 1982 [our Supreme Court] has cautioned that municipalities may lack the power to charge for prospective services absent the essential 'to be' language." *Quality Built Homes Inc. v. Town of Carthage*, 369 N.C. 15, 20–21, 789 S.E.2d 454, 458 (2016) (*Quality Built Homes I*) (citing *Town of Spring Hope v. Bissette*, 305 N.C.

248, 251, 287 S.E.2d 851, 853 (1982) (dictum)).[3] Because the pre-2017 statute lacked the "to be" language and only authorized municipalities to "establish and revise . . . rates, fees, charges, and penalties for the use of or the services *furnished* by any public enterprise[,]" N.C. Gen. Stat. § 160A-314(a) (2016) (emphasis added), our Supreme Court concluded the statute only permitted municipalities to charge for *contemporaneous* services. *Quality Built Homes I*, 369 N.C. at 22, 789 S.E.2d at 459.

It is well established that municipalities, absent a local enabling act granted by the General Assembly, were not permitted to charge for prospective services under the previous versions of N.C. Gen. Stat. § 160A-314(a)—doing so would be *ultra vires*. *See id.* at 16, 789 S.E.2d at 455 ("As creations of the legislature, municipalities have only those powers delegated to them by the General Assembly.").

Thus, the present case turns on whether Greensboro's capacity use fees were "prospective" or "contemporaneous."

Greensboro argues their capacity use fees were contemporaneous because water and sewer service was available here when Developers used "jumpers"— temporary pipes that bypass the meter box (before meter installation by Greensboro) and connect the water and sewer system to an under-construction property—to access

---

[3] Many North Carolina municipalities heeded the Supreme Court's warning and sought local acts. *See, e.g.,* An Act to Allow the Towns of Knightdale and Zebulon to Impose Water and Wastewater Capacity Charges, ch. 668, § 2, 1987 N.C. Sess. Laws 1235, 1236; An Act to Allow the Town of Rolesville to Impose Impact Fees, ch. 996, § 1, 1987 N.C. Sess. Laws 178, 178; An Act to Allow the Town of Wendell to Impose Water and Wastewater Capacity Charges, ch. 68, § 2, 1987 N.C. Sess. Laws 53, 54.

water during construction *before* the capacity use fees were due. We disagree.

Past decisions have developed binding jurisprudence establishing when fees are considered prospective and, thus, illegal.[4] In the seminal case, *Quality Built Homes I*, fees were due "[u]pon approval of a subdivision of real property" and had to be paid to receive "final plat approval." *Id.* at 16, 789 S.E.2d at 455–56. If the property was already subdivided, the municipality would refuse to issue building permits until the fees were paid. *Id.* at 17, 789 S.E.2d at 456. The stated purpose for the fees was "to cover the costs of expanding the water and sewer systems." *Id.* at 16, 789 S.E.2d at 456 (cleaned up). Our Supreme Court concluded that the Town had exceeded its delegated authority by adopting ordinances establishing the fees. *Id.* at 22, 789 S.E.2d at 459.

In a subsequent case, *Kidd Construction Group, LLC v. Greenville Utilities Commission*, the defendant had established impact fees which were due "as a precondition to development approval, to the issuance of building permits, and to receiving service." 271 N.C. App. 392, 395, 845 S.E.2d 797, 799 (2020). The defendant had been chartered by our General Assembly with the authority to establish fees for "services rendered." *Id.* at 398, 845 S.E.2d at 801. The stated purpose of the impact fees was to "recover a proportional share of the cost of capital facilities constructed to

---

[4] Greensboro used the term "capacity use fee" to describe its charges. Municipalities referred to these fees by a variety of names, such as "impact fee" in *Quality Built Homes* and "capacity fee" in *Kidd* and *Daedalus*.

provide service capacity for new development or new customers connecting to the water/sewer system." *Id.* at 395, 845 S.E.2d at 798–99. Our Court concluded that the impact fees were for future services and, therefore, not authorized under the legislative charter setting for the defendant's powers.

More recently, in *Daedalus, LLC v. City of Charlotte*, our Court considered fees established by the City of Charlotte which were due "at the time property owners appl[ied] for new water and sewer service." 282 N.C. App. 452, 454, 872 S.E.2d 105, 108 (2022). Fee payment was a "mandatory precondition of connecting to [the developer's] existing water and sewer infrastructure." *Id.* at 455, 872 S.E.2d at 108. Unlike the other cases, the municipality in this case did not have a stated purpose for the fees. *Id.* at 454, 872 S.E.2d at 108. Our Court held the fees were not authorized, as they "were charged for future discretionary spending and not for contemporaneous use of the system or for services furnished." *Id.* at 462, 872 S.E.2d at 113.

In this case, when viewed in the light most favorable to Greensboro, the evidence shows that capacity use fees were collected after the following events: plan or development approval; plat approval; installation of water mains and laterals; issuance of building permits; substantial construction progress; issuance of individual trade permits, including plumbing permits; commencement of water and sewer services through jumper connections to the system; and multiple plumbing inspections. Towards the end of the construction process (and after the aforementioned events), Developers would request that Greensboro install the meter,

at which time the capacity use fees were due, the meter was set, and volumetric billing service began. Afterwards, the final plumbing and building inspections occurred, and then a certificate of occupancy was issued.

Despite Greensboro's contentions, we hold its capacity use fees were similar in all material aspects to those other municipalities' fees, which were held to be *ultra vires* and illegal.

Though the fees at issue here were collected later in the construction process than in previous cases, Greensboro's fees were still collected *before* official water and sewer service was available to the properties. The fees were due at the time of meter installation, and official water and sewer service could not begin until the meter was installed and volumetric billing began. Though Greensboro may have been acting in Developers' interests with developer-friendly policies that allowed developers to use the system on a temporary basis during construction, it is clear that Developers were denied *official* use of the system until *after* paying the fees. Further, Greensboro's stated purpose for its capacity use fees is strikingly similar to the stated purposes in the other cases, as they were all used to recover costs associated with *expanding* the systems for *new* development.

Thus, for the foregoing reasons, we affirm the trial court's granting of summary judgment for Developers and denial of summary judgment for Greensboro regarding the capacity use fees charged prior to the 2017 legislation.

B. Fees After 2017 Legislation

In response to *Quality Built Homes I*, the General Assembly amended N.C. Gen. Stat. § 160A-314(a) to confer prospective charging authority upon municipalities, effective 1 October 2017. *See* N.C. Gen. Stat. § 160A-314(a) (2017) (replacing the word "furnished" with the phrase "furnished or to be furnished*").*

The General Assembly also adopted the Public Water and Sewer System Development Fee Act (the "System Development Fee Act" or the "Act"), N.C. Gen. Stat. § 162A-200, *et seq*, (also effective 1 October 2017) which authorized municipalities to charge a "system development fee." Essentially the same as Greensboro's capacity use fee, a system development fee is "[a] charge or assessment for service . . . imposed with respect to *new* development to fund costs of capital improvements necessitated by and attributable to such *new* development[.]" N.C. Gen. Stat. § 162A-201(9) (2022) (emphases added).

However, a municipality is not authorized to collect a system development fee until it complies with the "conditions and limitations" of the System Development Fee Act. *Id.* § 162A-203(a) (2022). Among other requirements, Section 162A-205 requires the system development fee be calculated "based on a written analysis . . . prepared by a financial professional or licensed professional engineer" and then "adopted by resolution or ordinance of the local government unit in accordance with G.S. 162A-209." *Id.* § 162A-205(1), (8) (2022). The written analysis must also be posted on the municipality's website "[f]or not less than 45 days" prior to a public hearing to consider its adoption. *Id.* § 162A-209(a), (b) (2022).

Here, Greensboro complied with all requirements necessary to adopt a system development fee under the Act: Greensboro conducted a written analysis, posted the results on the city website on 16 March 2018, and held a public hearing on 15 May 2018; the city council voted to adopt the system development fee on 19 June 2018; and the ordinance went into effect on 1 July 2018.

### 1. *Fees Collected 1 October 2017 to 1 July 2018*

The issue is whether Greensboro was authorized to begin charging prospective fees under the System Development Fee Act on 1 October 2017 (when the Act went into effect) or not until 1 July 2018. Greensboro's fees collected between 1 October 2017 and 1 July 2018 totaled $2,008,999.82.

The System Development Fee Act states that

> [a] system development fee adopted by a local governmental unit *under any lawful authority* other than this Article *and in effect on October 1, 2017*, shall be conformed to the requirements of this Article not later than July 1, 2018.

N.C. Gen. Stat. § 162A-203(b) (2022) (emphases added). Greensboro argues that the amended version of Section 160A-314(a) (adding the "to be furnished" language) is the "lawful authority" to which Section 162-203(b) refers, whereas Developers argue the term "lawful authority" refers to municipalities' local acts authorized by the General Assembly on or before 1 October 2017.

Notably, no other municipality cited in our line of jurisprudence has asserted this novel argument when rebutting developers' lawsuits. The municipalities in *Kidd*

and *Daedalus* were required to refund their fees collected during the grace period. *See Kidd*, 271 N.C. App. at 396, 845 S.E.2d at 799; *Daedalus*, 282 N.C. App. at 455, 872 S.E.2d at 108.

We review issues of statutory construction *de novo*. *In re Ernst & Young, LLP*, 363 N.C. 612, 616, 684 S.E.2d 151, 154 (2009) (citations omitted). "In resolving issues of statutory construction, we look first to the language of the statute itself." *Hieb v. Lowery*, 344 N.C. 403, 409, 474 S.E.2d 323, 327 (1996). The Act itself requires a narrow construction "to ensure that system development fees do not unduly burden new development." N.C. Gen. Stat. § 162A-215 (2022).

Here, the General Assembly included the phrases "lawful authority" and "in effect on October 1, 2017." When viewed together, these phrases clearly refer to the local enabling acts authorized by the General Assembly that were legal on 1 October 2017. Greensboro did not have a local enabling act; thus, Greensboro did not fall into this category and did not have authority to charge prospective system development fees during the grace period. We conclude the grace period from 1 October 2017 to 1 July 2018 was intended to give those municipalities with local enabling acts time to conform with the new requirements imposed by the System Development Fee Act, not to allow municipalities who failed to previously heed the Supreme Court's warning to benefit from the nine-month grace period.

### 2. Fees Collected After 1 July 2018

Greensboro also "occasionally" charged capacity use fees for "existing

development" after 1 July 2018, which totaled $14,865.70.

Under the Act, "existing development" refers to "land subdivisions, structures, and land uses in existence at the start of the written analysis process[,]" and "new development" refers to development "occurring after the date a local government beginning the written analysis process[.]" N.C. Gen. Stat. § 162A-201(3), (6) (2022).

Greensboro argues charging fees for existing development is outside the scope of the Act because it requires only that fees for new development conform to the Act's requirements. Developers argue the existing development fees were not allowed because Greensboro was simultaneously charging both the original capacity use fees (for existing development) *and* fees adopted under the System Development Fee Act (for new development) in violation of *Kidd*, 271 N.C. App. at 395, 845 S.E.2d at 799 ("The [Act] grants local government utilities specific authority to assess *one type of upfront charge*—a system development fee—as long as that fee is calculated in accordance with the [Act's] 'written analysis' process."). Because Greensboro was charging multiple types of upfront charges, we conclude the fees collected for existing development starting 1 July 2018 were *ultra vires,* illegal, and must be refunded.

C. Greensboro's Motion to Strike

Finally, Greensboro argues the trial court erred by denying its motion to strike portions of two of Developers' affidavits. Greensboro contends those affidavits sought to materially alter Developers' sworn deposition testimony and interrogatory responses.

We review the trial court's denial of a motion to strike for abuse of discretion. *Blair Concrete Servs., Inc. v. Van-Allen Steel Co., Inc.*, 152 N.C. App. 215, 219, 566 S.E.2d 766, 768 (2002).

"[A] party opposing a motion for summary judgment cannot create an issue of fact by filing an affidavit contradicting his prior sworn testimony." *Supplee v. Miller-Motte Bus. Coll., Inc.*, 239 N.C. App. 208, 225, 768 S.E.2d 582, 596 (2015). The trial court should exclude the portions of an affidavit if "[t]he additions and changes appearing in the affidavits are conclusory statements or recharacterizations more favorable" to the party who submitted the affidavit. *Marion Partners, LLC v. Weatherspoon & Voltz, LLP*, 215 N.C. App. 357, 362–63, 716 S.E.2d 29, 33 (2011).

Here, a True Homes employee and a D.R. Horton employee each submitted new affidavits after giving deposition testimony. Both employees' affidavits contained identical language: "At the time the Capacity Use Fees were required to be paid, no water or sewer service was being furnished to the property. The City would not provide water and sewer service until a water meter was installed."

In True Homes's prior interrogatory responses, the company acknowledged that "[w]ith respect to construction activities, the City allowed [True Homes] to bypass the meter box with a straight pipe or jumper on dates prior to a meter being set[,]" and True Homes could "fill and drain tubs for testing purposes prior to a meter being set[.]" However, True Homes also stated it could not access Greensboro's water or sewer service as a "metered customer" until capacity use fees were paid and a

meter was set. During previous True Homes employee depositions, employees also acknowledged that (1) mains and laterals were installed and "operational, in the sense that it can be used [ ] for water and sewer service" when True Homes purchased a finished lot and (2) True Homes used water through jumpers during construction to test plumbing.

In D.R. Horton's prior depositions, an employee acknowledged that the water mains were operational when D.R. Horton bought finished lots. He further stated that he was unaware if any construction sites actually used jumpers but that it "wouldn't surprise [him] a bit" if they were used.

We conclude the new affidavits do not necessarily contradict Developers' previous interrogatories and depositions. Rather, they demonstrate the problem at the heart of this case: Developers and Greensboro fundamentally disagree on what qualifies as water and sewer service. Greensboro believes access to the system via temporary jumpers qualifies; however, we agree with Developers, as discussed *supra*, that only *official* and *permanent* water and sewer service qualifies, which occurs here only after fees are paid and the meter is set.

Developers were not creating new issues of fact with their affidavits. They were simply explaining the temporary nature of the water and sewer availability prior to gaining official access to the system, which occurred only after they paid capacity use fees and received a set meter. Developers' affidavits were not recharacterizations of the evidence in a more favorable light; the affidavits simply

further emphasized Developers' consistent point that official and permanent service was not available until later, only after the fees were paid.

Therefore, Greensboro has failed to show that the trial court abused its discretion in denying the motion to strike.

### III. Conclusion

We affirm the trial court's order granting summary judgment in favor of Developers and denying Greensboro's motion to strike.

AFFIRMED.

Judges TYSON and GRIFFIN concur.