IN THE SUPREME COURT OF NORTH CAROLINA

No. 115A25

Filed 20 March 2026

WARDSON CONSTRUCTION, INC. and HOMEQUEST BUILDERS, INC.

v.

CITY OF RALEIGH

Appeal pursuant to N.C.G.S. § 7A-27(a)(4) from an order granting plaintiffs' motion for class certification entered on 16 September 2024 by Judge G. Bryan Collins Jr. in Superior Court, Wake County. Heard in the Supreme Court on 28 October 2025.

*James R. DeMay, Scott C. Harris, Martha A. Geer, and John Hunter Bryson for plaintiff-appellees.*

*Fox Rothschild LLP, by Robin L. Tatum and Kip D. Nelson; and Carolyn A. Bachl for defendant-appellant.*

EARLS, Justice.

This case concerns whether a lawsuit challenging certain Capital Facilities Fees imposed by the City of Raleigh may proceed as a class action. Wardson Construction and other home builders allege that Raleigh unlawfully required them to pay these fees as a condition of development, and they seek return of those payments under state law. The trial court certified a class consisting of builders who paid the fees, allowing the claims to be resolved in a single proceeding. Raleigh appeals that decision, arguing that some builders passed the costs of the fees on to home purchasers and therefore cannot pursue relief together as a class.

We affirm the certification order. North Carolina law directs that any fee unlawfully collected by a local government be returned to the person who made the payment. *See* N.C.G.S. § 160D-106 (2025). Because the right to seek repayment turns on payment itself—not on who may ultimately have borne the cost—the possibility that some builders later incorporated the fees into home prices does not prevent class treatment. The question of whether the fees were lawful is for another day; today's decision addresses only whether the case may proceed on behalf of all affected home builders as certified in one action. We hold that the trial court did not err in its analysis of the legal criteria for class certification and did not abuse its discretion when it concluded that a class action is the superior method of adjudicating the claim.

## I. Background

### A. Statutory Background

In 2013, Raleigh adopted an ordinance related to water and sewer extension policies that imposed fees for connecting with the city's water and sewer systems. These Capital Facilities Fees (CFFs) were apparently reserved for future expansion or future water and sewer systems or services. Developers, builders, and other entities alike were required to pay CFFs any time they submitted a water or sewer connection application to the city.

In 2016, this Court held in *Quality Built Homes Inc. v. Town of Carthage*, 369 N.C. 15 (2016), that municipalities lack the statutory authority under the Public Enterprise Statutes to charge for the future furnishing of water and sewer services.

*Id.* at 20–21. In so holding, however, we noted that municipalities may assess such impact fees by obtaining separate enabling legislation from the General Assembly to do so. *See id.* at 21.

In 2017, the General Assembly enacted the Public Water and Sewer System Development Fee Act (the Fee Act). S.L. 2017-138, § 1, 2017 N.C. Sess. Laws 996, 996–99. The Fee Act authorized local governments to adopt water and sewer impact fees, or "system development fee[s]," subject to certain "conditions and limitations," effective 1 October 2017. *Id.* §§ 1, 11, 2017 N.C. Sess. Laws at 997, 1002; *see also* N.C.G.S. § 162A-203(a) (2025). The Fee Act also included a "bridge provision," providing that any "system development fee adopted by a local government under any lawful authority other than this Article and in effect on October 1, 2017, shall be conformed to the requirements of this Article not later than July 1, 2018." N.C.G.S. § 162A-203(b). In response, Raleigh subsequently amended its CFF ordinance on 5 September 2017 and 5 June 2018.

In 2019, the General Assembly enacted a "refund statute," N.C.G.S. § 160D-106, which provides:

> If a local government is found to have illegally imposed a tax, fee, or monetary contribution for development or a development approval not specifically authorized by law, the local government shall return the tax, fee, or monetary contribution plus interest of six percent (6%) per annum to the person who made the payment or as directed by a court if the person making the payment is no longer in existence.

N.C.G.S. § 160D-106; *see also* An Act to Clarify, Consolidate, and Reorganize the

Land-Use Regulatory Laws of the State, S.L. 2019-111, § 2.4, 2019 N.C. Sess. Laws 424, 443. Absent from this statute is any provision that limits the passing on of CFFs. Instead, the statute expressly states that such refunds will be made available to "the person who made the payment." N.C.G.S. § 160D-106.

## B. Factual Background

Plaintiffs Wardson Construction, Inc. and HomeQuest Builders, Inc. (together, Wardson Construction) are home builder corporations organized and operated under North Carolina law. In adherence to defendant Raleigh's CFF ordinance, Wardson Construction allegedly paid a combined total of nearly $20,000 in CFFs in connection with six different properties between 2016 and 2018. Contending that the payment of the CFFs was illegal, Wardson Construction sued to recover these fees. It also sought to represent a class of residential and commercial developers, builders, and contractors who similarly paid CFFs to Raleigh. Although the cost of CFFs are often passed on to the property owners who would, in turn, reimburse the payor, Wardson Construction contends that the party who paid an illegally charged fee is entitled to a state-mandated refund. Accordingly, it sought recovery for these fees, as well as recovery for other builders, contractors, and developers who also paid CFFs to Raleigh between 12 January 2016 and 30 September 2018.

## C. Procedural Posture

On 12 August 2019, Wardson Construction filed a complaint in the Superior Court, Wake County and sought class certification. Wardson Construction sought a

declaratory judgment that Raleigh adopted CFFs as a condition for issuing certain permits and in order to furnish future water or sewer services without lawful authority. Wardson Construction also sought certification of a class of all fee payors, the return of all unlawfully collected CFFs plus interest, and an award of costs, expenses, and attorneys' fees.

In response to the complaint, Raleigh moved to dismiss, petitioned for writ of certiorari to review the order denying its motion to dismiss, moved for judgment on the pleadings, and moved to stay discovery, each of which was ultimately denied.

On 8 July 2024, Wardson Construction moved for class certification under Rule 23 of the North Carolina Rules of Civil Procedure. On 16 September 2024, the trial court granted that motion. The trial court certified the class as follows:

> All natural persons, corporations, or other entities who (a) at any point from January 12, 2016 through June 30, 2018 (b) paid water or sewer Capital Facilities Fees to the City of Raleigh pursuant to the Schedule of Fees and Code of Ordinances adopted by the City of Raleigh.

The class here includes 735 payors of CFFs and over 3,900 different payments, and the class is comprised of contractors and builders, commercial developers, and individual property owners. In its certification order, the trial court reasoned that the identities of class members were ascertainable during the class period, plaintiffs would fairly and adequately represent the class, the number of class members was sufficiently numerous, common issues of law and fact predominated among all members of the class, and that a class action was a superior method of adjudication

for the as many as 630 potential actions, in light of the potential for duplicative costs and potential to obtain recovery for otherwise nominal claims. It also concluded that proper notice would be sent to the class. Accordingly, the trial court granted Wardson Construction's motion for class certification.

Also on 16 September 2024, by separate order, the trial court granted Wardson Construction's motion for summary judgment on the merits and denied Raleigh's similar motion. Raleigh then separately appealed the summary judgment order to the North Carolina Court of Appeals.[1]

On 15 October 2024, Raleigh appealed the trial court's class certification order directly to this Court under the provisions of N.C.G.S. § 7A-27(a)(4). The issue of class certification is the only issue we address on appeal.

## II. Governing Law

### A. Class Certification Under Rule 23

Rule 23 of the North Carolina Rules of Civil Procedure permits representative litigation "[i]f persons constituting a class are so numerous as to make it impracticable to bring them all before the court," provided that the representatives "fairly insure the adequate representation of all." N.C.G.S. § 1A-1, Rule 23(a) (2025).

---

[1] The appeal of the order granting Wardson Construction's motion for summary judgment on the merits of its claims is still pending before the Court of Appeals. *See Wardson Constr., Inc. v. City of Raleigh*, No. 19CVS10860-910 (Super. Ct. Wake Cnty. Sep. 16, 2024), *appeal docketed*, No. 25-416 (N.C. Ct. App. Apr. 30, 2025). We reiterate that this Court's review is confined to the class certification order.

Although the rule's text is concise, this Court has developed guiding principles governing certification through its decisions.

A proper class exists when the members share an interest in the same issue of law or fact and that issue predominates over issues affecting only individual members. *Crow v. Citicorp Acceptance Co.*, 319 N.C. 274, 277 (1987). The party seeking certification bears the burden of demonstrating that the action satisfies Rule 23's requirements, including numerosity and adequate representation. *Id.* at 282. Adequate representation requires that the named plaintiffs possess a genuine interest in the litigation and that no conflict exists between the representatives and the absent class members. *Faulkenbury v. Tchrs.' & State Emps.' Ret. Sys.*, 345 N.C. 683, 697 (1997). Differences among class members do not necessarily rise to the level of an intraclass conflict of interest capable of defeating certification unless those differences create antagonistic legal interests. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 (1997) (noting that the plaintiffs could not adequately represent a class where diversity in their medical conditions created a direct contradiction between class members who needed "generous immediate payments" and those who needed "an ample, inflation-protected fund for the future"). Conflicts of interest that involve differing legal interests that are not directly antagonistic typically can be addressed by creating subclasses with separate counsel. *See Surgeon v. TKO Shelby, LLC*, 385 N.C. 772, 779 (2024).

In addition to these requirements, our precedents recognize that class actions serve important institutional purposes, including promoting efficiency, preventing inconsistent adjudications, and enabling the resolution of claims that might otherwise be impracticable to litigate individually. *See Fisher v. Flue-Cured Tobacco Coop. Stabilization Corp.*, 369 N.C. 202, 215–16 (2016). When these prerequisites are satisfied, the determination of whether a class action is superior to other available methods of adjudication is committed to the sound discretion of the trial court. *Beroth Oil Co. v. N.C. Dep't of Transp.*, 367 N.C. 333, 337 (2014). Accordingly, the trial court's legal analysis of the class certification criteria is reviewed de novo, the court's corresponding fact findings are reviewed for competent evidence, and the court's ultimate determination to certify a class as the superior method of adjudicating the claims is reviewed solely for abuse of discretion. *Empire Contractors, Inc. v. Town of Apex*, 388 N.C. 552, 556–57 (2025).

Finally, certification does not resolve the merits of the underlying dispute. A court may examine issues touching on the merits only to the extent necessary to determine whether the requirements of Rule 23 are satisfied. *See Surgeon*, 385 N.C. at 781–82.

## B. Interpretation of N.C.G.S. § 160D-106

In the case at hand, the home builders' claims arise from N.C.G.S. § 160D-106, which governs the refund of fees determined to have been unlawfully imposed. The statute in question provides as follows:

> If a local government is found to have illegally imposed a tax, fee, or monetary contribution for development or a development approval not specifically authorized by law, the local government shall return the tax, fee, or monetary contribution plus interest of six percent (6%) per annum to the person who made the payment or as directed by a court if the person making the payment is no longer in existence.

N.C.G.S. § 160D-106.

Statutory interpretation begins with the text enacted by the General Assembly. When statutory language is clear and unambiguous, courts apply the statute as written and do not add conditions the legislature did not include. *See Wynn v. Frederick*, 385 N.C. 576, 581 (2023); *O & M Indus. v. Smith Eng'g Co.*, 360 N.C. 263, 268 (2006). Section 160D-106 identifies a single criterion for return of an unlawful fee: payment by the claimant. The statute does not distinguish between those who ultimately bore the economic burden of the fee and those who may have incorporated the fee into subsequent private transactions. Nor does it require tracing the downstream incidence of the payment or authorize offsets based on possible reimbursements.

Therefore, if a fee is determined to have been unlawfully imposed, then the statutory injury occurs at the time the payment is made. This conclusion accords with our decisions recognizing that claims challenging unlawful development fees arise from the act of payment itself. *Quality Built Homes Inc. v. Town of Carthage*, 371 N.C. 60, 72 (2018).

The structure of section 160D-106 further confirms this reading. *See Cohane v.*

*Home Missioners of Am.,* 387 N.C. 1, 8 (2025) ("[W]ords and phrases are interpreted in their statutory context . . . ."). By directing repayment to the payor alone, the General Assembly adopted an administrable and objective rule that avoids individualized inquiries into private contractual arrangements. This scheme also avoids making the local government vulnerable to multiple entities seeking to recoup the same fee. Nothing in the statutory text or structure encourages courts to undertake case-by-case determinations of ultimate economic incidence before a refund may be ordered where the entity that made the payment still exists.

Because entitlement under section 160D-106 turns on payment rather than downstream reimbursement, the alleged passing on of fees does not alter the nature of the statutory claim and does not independently create obstacles to class certification under Rule 23.

### III.   The Passing-On Defense Does Not Defeat Class Certification

Raleigh's challenge to certification rests on a single premise advanced in several forms. Raleigh contends that some members of the certified class incorporated the CFFs into the prices charged to home purchasers and therefore did not ultimately bear the economic burden of the fees. From this premise, Raleigh argues that the home builders lack a common injury, that individualized issues predominate, that conflicts exist within the class, and that a class action is not a superior method of adjudication.

Each of these arguments depends upon the same assumption—that the legally

relevant payor is the party who ultimately absorbed the economic cost of the fee rather than the party who remitted payment to Raleigh. That assumption is inconsistent with the governing statute.

As explained above, N.C.G.S. § 160D-106 directs that an unlawfully imposed fee "shall return . . . to the person who made the payment." N.C.G.S. § 160D-106. The statute ties entitlement to the act of payment itself. Raleigh's argument instead asks this Court to look beyond the transaction between the home builders and Raleigh and determine who ultimately bore the economic burden through subsequent private arrangements. But legal rights arising from a payment ordinarily belong to the party who remitted funds to the counterparty, even when the expense is later reallocated through reimbursement or pricing decisions. Subsequent agreements between private actors may shift economic incidence, but they do not alter who made the initial payment in the underlying transaction.

Because entitlement under section 160D-106 turns on payment rather than ultimate economic burden, the alleged passing on of fees does not defeat certification under Rule 23.

## A. Existence of a Class and Predominant Issue

Under Rule 23, a class exists when members share an interest in the same issue of law or fact and that issue predominates over issues affecting only individual members. *Crow*, 319 N.C. at 277. Here, the central question—whether Raleigh lawfully imposed the CFFs—is identical for every member of the certified class.

Resolution of that question will determine liability for all home builders' claims in a single stroke. *See Dewalt v. Hooks*, 382 N.C. 340, 344 (2022).

Raleigh's passing-on theory does not alter this analysis. Because the statute defines the relevant injury as the payment of an unlawful fee, variations in how individual builders later structured their private transactions do not change the nature of the legal claim. Differences in downstream reimbursement therefore do not displace the predominant common issue presented by the legality of the fees.

Nor does Raleigh's argument affect numerosity. The record reflects hundreds of payors and thousands of fee transactions, rendering joinder impracticable. The possibility that some class members later recovered costs from purchasers does not alter the size or cohesion of the class defined by payment of the fees.

Raleigh's reliance on *Anderson Creek Partners, L.P. v. County of Harnett*, 382 N.C. 1 (2022), does not alter this conclusion. *Anderson Creek* involved a constitutional takings challenge to a "capacity use" development fee. *Id.* at 19. Resolving the merits of that challenge required considerations of proportionality and the factual nexus between the fee charged and the development's impact. *Id.* at 27–28. The case did not interpret section 160D-106 or consider a statutory refund scheme directing repayment to the person who made the payment. *See id.* at 42 (noting that "the passage of the Public Water and Sewer Development Fee Act" was "relevant to the validity of any challenge to the County's *statutory* authority to enact 'capacity use' fees like those at issue" but ultimately had "no bearing on the constitutionality of

those fees," the issue presented).

Here, by contrast, entitlement arises from a statute that defines injury by the act of payment itself. The home builders' claims therefore do not depend on tracing downstream economic effects or determining who ultimately bore the cost of the fees. Because the statutory right asserted in this case is uniform across all payors, the individualized concerns present in *Anderson Creek*'s constitutional takings analysis are not implicated, and that decision does not undermine certification.

Raleigh also argues that certification will require individualized discovery to determine whether particular home builders passed the fees on to purchasers and therefore suffered no injury. That argument rests on the same mistaken premise discussed above. Because section 160D-106 defines the relevant injury as the payment of an unlawful fee, discovery concerning downstream pricing decisions or private reimbursement arrangements is not necessary to establish liability under the statute. The central questions in this litigation—whether Raleigh lawfully imposed the fees and which entities paid them—are capable of common proof. The possibility that individualized evidence may later bear on damages or private relationships among nonparties does not defeat certification where liability turns on issues common to the class. *See Crow*, 319 N.C. at 277.

## B. Adequacy of Representation and Alleged Intraclass Conflict

Rule 23 requires that the class representatives fairly ensure the adequate representation of absent class members. That requirement is defeated where

substantial conflicts of interest exist within the class. Some conflicts of interests, such as those creating fundamentally adverse legal interests, will preclude class certification altogether. *See Amchem*, 521 U.S. at 626; *Surgeon*, 385 N.C. at 779. Other conflicts, such as those requiring some class members to address additional defenses or evidentiary burdens not applicable to other class members, could require the creation of subclasses with separate counsel. *Surgeon*, 385 N.C. at 779.

All members of the certified class share the same statutory claim: each paid the challenged fees and seeks return of those payments under section 160D-106. Wardson Construction advances that claim on behalf of all home builders and does not assert any distinct entitlement based on whether particular builders passed on costs to purchasers. The legal theory and requested relief are therefore uniform across the class.

The fact that some builders may have incorporated the fees into home prices does not create antagonistic interests. Differences in downstream economic effects do not transform aligned statutory claims into conflicting ones. *See Faulkenbury*, 345 N.C. at 698. Because the certified class consists solely of payors, any disputes between builders and home purchasers arise outside the class definition and do not create intraclass conflict, nor do they call into question the adequacy of the class representatives.

## C. Superiority

Once the prerequisites of Rule 23 are satisfied, the determination of whether

a class action is superior to other available methods of adjudication rests within the sound discretion of the trial court. *Beroth*, 367 N.C. at 337. Class actions promote efficiency, prevent inconsistent adjudications, and allow claims that might otherwise be impracticable to pursue individually to be resolved in a single proceeding. *Fisher*, 369 N.C. at 215–16.

The trial court reasonably concluded that those considerations support certification here. As the trial court noted, the legality of a uniform municipal fee presents a common question capable of resolution on a class-wide basis. Requiring individual actions by hundreds of home builders would risk inconsistent outcomes while imposing litigation costs disproportionate to many individual claims.

Raleigh argues that certification may permit recovery by builders who passed on the fees. But declining certification would not eliminate the possibility of unjust enrichment; it would instead make the retention of allegedly unlawful fees by Raleigh substantially more likely. The class mechanism ensures that the legality of the challenged exaction is adjudicated once, as Rule 23 contemplates.

Moreover, recovery by the home builders does not foreclose downstream adjustments among private parties. Contractual or equitable remedies may govern relationships between builders and purchasers, but those issues do not affect whether aggregate adjudication is the superior means of resolving the statutory dispute between the payors and Raleigh.

The trial court therefore acted within its discretion in concluding that a class

action is the superior method for adjudicating this controversy.

## IV.    Scope of the Decision

The question before this Court is limited to whether the trial court properly analyzed the legal criteria for class certification and whether the court abused its discretion in certifying a class action under Rule 23. This appeal does not require us to determine whether the CFFs were lawfully imposed, whether any particular class member is ultimately entitled to recovery, or the amount of any refund that may be owed. Those issues remain for resolution in further proceedings.

In evaluating certification, a court may consider aspects of the underlying claims only to the extent necessary to determine whether the requirements of Rule 23 are satisfied. *See Fisher*, 369 N.C. at 208–09. Our analysis of N.C.G.S. § 160D-106 therefore addresses the statute solely insofar as it bears on the existence of a common claim and the propriety of class treatment. Nothing in this opinion should be understood as resolving the merits of Wardson Construction's challenge to the fees or Raleigh's defenses to liability.

Nor does today's decision determine how any recovery, if one is ultimately ordered, must be distributed among private parties. Section 160D-106 governs the relationship between the payor and the governmental entity that collected the fee. Questions concerning contractual or equitable adjustments among home builders and home purchasers are not before us and are unaffected by this decision.

## V.    Conclusion

The trial court properly evaluated the legal criteria for class certification under Rule 23 and acted within its discretion in certifying a class consisting of home builders who paid the challenged CFFs. Because N.C.G.S. § 160D-106 ties entitlement to repayment to the act of payment itself, Raleigh's passing-on argument does not defeat the existence of a class, create impermissible conflicts among class members, or render class adjudication inferior to other available methods of resolving this controversy. Accordingly, the order certifying the class is affirmed.

AFFIRMED.

Justice BARRINGER did not participate in the consideration or decision of this case.